MICKLE VS UNITED STATES.

Opinion rendered November 24, 1906.

(18 S. W. Rep. 349).

1. *Criminal Law—Jury Review.*

> Where the evidence in a trial for larceny is conflicting and contradictory it was proper to submit same to jury and the Appellate Court will not disturb their findings.

2. *Same—Practice—Objections, Time to Enter.*

> Mansf. Dig. (Ind. Ter. Ann. St. 1899, Art. 3362), provides, that an objection to a decision must be made at the rendition thereof

and time, not extending beyond the succeeding term, may be given to reduce the exception to writing. *Held;* It is too late to consider objections not made until the bringing of a writ of error.

GILL, C. J., dissenting.

Error to the United States Court for the Central District of the Indian Territory; before Justice Wm. H. H. Clayton, March 31, 1905.

Ed. Mickle was convicted of larceny, and he brings error. Affirmed.

On November 15, 1904, the grand jury at South Mc-Alester returned an indictment for larceny against the defendant (appellant). It charged that the defendant unlawfully and feloniously did steal, take, and carry away from out of the possession, and without the consent, of Enoch Kendle, four hogs of the value of $20. On November 16, 1904, defendant waived arraignment and pleaded not guilty, and on November 28, 1904, on motion of defendant, the case was continued. On March 15, 1905, the case was tried before a jury, who returned the following verdict: "We, the jury, duly impaneled and sworn in the above-entitled action, do find from the law and evidence the within-named defendant, Ed. Mickle, guilty in manner and form as charged in the within indictment. J. A. Webster, Foreman." On March 25, 1905, defendant filed motion for new trial, which was overruled, and defendant filed petition for writ of error to this court, which was allowed.

*Wallace Wilkinson* and *Brewer & Andrews*, for plaintiff in error.

*T. B. Latham*, U. S. Atty.

TOWNSEND, J. (after stating the facts). The appellant has filed eight assignments of error: "(1) That the verdict is contrary to law. (2) That the verdict is contrary

to the evidence. (3) That the court erred in failing to instruct the jury to return verdict for the defendant (appellant). (4) That the court erred in permitting the prosecuting witness, Enoch Kendle, to testify to certain statements: 'I came home, and on my way back met Johnnie Richards, who gave me the information that he had seen the defendant driving the hogs. I went back to Wilburton and had another conversation with the defendant, and told him he had got my hogs and he had to bring them back or pay for them, and he said, all right, he would pay me for them, and said he would leave the money at the butcher shop for me. I came back, I think it was on the next day, and had a conversation with him. I told him that I had information that he had got my hogs. He said that, if I could find any man that saw him drive my hogs, he would pay me for them. He asked me the name of the party, and I refused to tell him. I didn't at that time want him to know who it was. He told me that he would leave the money at the butcher shop the next day. I went to the butcher shop, but did not get the money. I went to defendant's house and called him out and asked him why he did not have the money. He stated that he only had $10; that he would pay me that then, and pay the balance in a day or two. I told him that I would not accept it, that it had to all be paid at once.' (5) The court erred in admitting the testimony of Enoch Kendle, as follows: 'In a few days I went down to the butcher shop and saw Walter Mickle, the brother of the defendant, who paid me $20 in check on the Citizens' Bank of Wilburton. The check was drawn in favor of E. L. Mickle, and indorsed on the back, "E. L. Mickle." ' (6) The court erred in overruling the motion of defendant for new trial on the ground of newly discovered evidence, as set forth in affidavits, to which defendant excepted. (7) The court erred in overruling motion for new trial for the reason that the indictment failed to show that the alleged crime was

committed in the South McAlester division of the Central district, to which defendant excepted. (8) The court erred in overruling motion for new trial."

It will appear from the foregoing assignment of errors that not a single objection was made to the introduction of any evidence whatever, or the instructions of the court, nor an exception saved. The only exceptions taken were to the action of the court in its refusal to grant a new trial. The counsel filing the brief for appellant says: "It is proper to state, before beginning an argument, and so that our position in this cause may not be misapprehended, that counsel appearing in this brief were not of counsel, and were not in attendance at the trial of this case in the United States Court." Then counsel, under the first three assignments, proceeds to discuss the testimony introduced on the trial, and urges that much of it was improperly permitted to go to the jury, and was incompetent, and in his argument contends that it was insufficient to authorize a conviction, and that therefore the trial court should have directed a verdict of acquittal. Counsel cite several Kentucky cases to sustain the proposition "that the trial court, in giving its instructions to the jury, is required, without request, to give the law, the correct law, and the whole law." But, in regard to the introduction of testimony, the same court, in Buckles vs Commonwealth (Ky.) 68 S. W. 1086, says: "It is to be presumed that the trial court will correct an error to which its attention is called. It is to be presumed that the court will not rule erroneously, if proper objection is made. It is to be presumed, also, that the defendant acquiesces in that to which he does not object, and is satisfied with the rulings to which he does not except."

But what do the decisions of Arkansas, whose criminal law and procedure is in force in this jurisdiction, hold? In

Carroll vs State, 45 Ark. 548, it is said: "In Benton vs State, 30 Ark. 335, one ground of the motion for new trial was: 'The court erred in failing to read to the jury, as part of its charge, the whole law applicable to homicide, but confined itself in the charge to cases of murder in the first and second degree.' 'It appeared by the bill of exceptions that after the court had given the instructions asked for by the state, and nine asked for by the prisoner, being all asked on his behalf, the court of its own motion, gave a general charge to the jury. No exception appeared to have been taken to the charge given and the only objection made to it in the motion for a new trial was that it did not go far enough; that the judge did not read to the jury the whole law applicable to homicide, but such only as applies to cases of murder in the first and second degrees.' Chief Justice English, in delivering the opinion of the court, said: 'It is the province of the court to give in charge to the jury such principles of the law as it may deem applicable to the case. If a party desires other instructions, he may move them, and the court will give or refuse them, according to its judgment of their correctness or applicability. If refused, the party asking them may except to the opinion of the court. If objected to by the opposite party, and given, he may except. So either party may except to the general charge of the court. If the charge be the enunciation of several distinct principles, either party may except to any one or more of them. If all are deemed objectionable, each and all of them may be excepted to. But the exception should not be general to a number of distinct enunciations, but specific.' 'While in one sense,' says Mr. Bishop, 'it is undoubtedly the duty of the judge to give instructions to the jury, covering the entire law of the case, as respects all the facts proved, or claimed by the respective counsel to be proved, still, if he omits something, and is not asked to

supply the defect, the party who remained voluntarily silent cannot complain.' 1 Bishop, Cr. Pro. § 980; Dave vs State, 22 Ala. 23; Burns vs Commonwealth, 3 Metc. (Ky.) 13; Keech vs State, 15 Fla. 591; People vs Ah Wee, 48 Cal. 236; Mercer vs State, 17 Ga. 146; Mason vs People, 2 Col. 373; State vs Bogain, 12 La. Ann. 264; Commonwealth vs Costly, 118 Mass. 1; People vs Rodundo, 44 Cal. 538; State vs Scott, 12 La. Ann. 386; State vs O'Neal, 29 N. C. 251." In Holt vs State, 47 Ark. 198, 1 S. W. 61, the court said: "One ground of appellant's motion for a new trial is the court did not properly instruct the jury. It appears from the bill of exceptions in this case that the court gave the jury instructions which are not copied in the transcript. To those given and copied in the transcript no exceptions were taken and no objections are urged against them here. 'It is the province of the court to give in charge to the jury such principles of the law as it may deem applicable to the case.' If the defendant or plaintiff desires other instructions, he may ask them; but, if he fails to do so, and remains voluntarily silent, he cannot complain."

From an examination of the evidence it is evident the same was conflicting and contradictory, and it was therefore very properly submitted to the jury for their determination, and the court will not disturb their findings. In Holt vs State, 47 Ark. 196, 1 S. W. 61, it is said: "It is urged here that the verdict of the jury was contrary to the evidence. The testimony of the witnesses was conflicting and contradictory. It was the province of the jury to determine which of them was entitled to credit, and to find accordingly. This court will not review the evidence for the purpose of passing upon the correctness of their conclusion. There was sufficient evidence to sustain the verdict here." See Mains vs State, 13 Ark. 285, in which the court say: "Where the statements of witnesses are contradictory, it is the province of the jury

to determine which of them is entitled to credit, and to find accordingly; and this court will not review the evidence for the purpose of passing upon the correctness of their conclusion as to the weight of evidence. It is sufficient that there is not a total want of evidence to support the verdict."

In the fourth assignment, objection is made to the testimony of Enoch Kendle. In our opinion this objection comes too late. Mansf. Dig. § 5157 (Ind. Ter. Ann. St. 1899, § 3362): "The party objecting to the decision must except at the time the decision is made, and time may be given to reduce the exception to writing, but not beyond the succeeding term; but the parties may agree that exceptions to all decisions made during the trial are saved without being especially mentioned at the time the decision is made." In Wharton's Criminal Pleading & Practice, § 772, it is said: "In preparing the bill of exceptions, it is usually necessary, in criminal as well as in civil issues, to show that the objection taken to the action excepted to was made clearly and reasonably before the action of the court complained of; that the objection was overruled; and that the court was called upon to note an exception at the time. When specific instructions are excepted to, they must be stated in the bill of exceptions; when a charge as a whole is excepted to as defective, it must be given at large; when the exception is that the evidence does not sustain the verdict, the evidence must be given in full."

The fifth assignment is the same as the fourth.

Under the sixth assignment, a new trial is asked on the ground of newly discovered evidence, and upon its being overruled an exception was saved, which was the first exception taken in the case. In Runnels vs State, 28 Ark. 121: "Applications for new trials, based on the ground of newly

discovered evidence, should be received with caution, and should be corroborated by other affidavits than that of the accused, and should not only state that the defendant did not know of the testimony in time for trial, but that he could not have obtained it by reasonable diligence." In Bixby vs The State, 15 Ark. 398: "In determining motions for new trials, upon the ground of newly discovered testimony, some discretion is vested in the judge presiding at the trial, because of his opportunities of forming a correct opinion whether the application be made in sincerity and good faith, or whether it is the last shift resorted to by an unscrupulous criminal to evade the punishment of an offense of which he is found guilty, after availing himself of all the means liberally provided by law for securing a fair and impartial trial." Wharton's Criminal Pleading & Practice, § 871: " 'After the verdict,' said Rogers, J., on a motion for a new trial, after a capital conviction, in Pennsylvania, 'when the motion for a new trial is considered, the court must judge not only of the competency, but of the effect, of evidence. If, with the newly discovered evidence before them, the jury ought not to come to the same conclusion, then a new trial may be granted; otherwise we are bound to refuse the application.' And, when the evidence produced is clearly immaterial, this limitation should be strictly enforced."

The seventh assignment is the alleged error that the indictment does not show that the alleged offense was committed within the South McAlester division of the Central District. Section 7 of the act of Congress approved March 1, 1895 (chapter 145, 28 Stat. 697) says: "That all prosecutions for crimes or offenses of which the United States Court in the Indian Territory shall have jurisdiction, shall be had within the district in which said offense shall have been committed, and in the court nearest or most convenient to the locality where it is committed, to be determined by the judge

on motion to transfer the trial of the case from one court to another." Section 2113 of Mansfield's Digest (Ind. Ter. Ann. St. 1899, § 1456) says: "If the indictment contains no statement of the place in which the offense was committed, it shall be considered as charged therein that it was committed in the local limits of the jurisdiction of the court in which the grand jury was impaneled." And, in State vs Hunn, 34 Ark. 321, it is said: "Where the name of the county appears in the caption, and is referred to in the body of the indictment, it is sufficient."

In our judgment the motion for new trial was properly overruled.

The defendant had a fair trial, and the judgment of the court is affirmed.

LAWRENCE, J., concurs.

GILL, C. J. (dissenting). Appellant was convicted of the larceny of four hogs, for which he was sentenced to the penitentiary for two years upon the following condition of evidence: Enoch Kendle lost four white hogs about 10 months old, marked crop and two splits in each ear. Before the hogs were lost, defendant (appellant) was at Kendle's house, who showed him the hogs and told him he wanted to keep them. When Kendle missed his hogs from the range, he went to appellant and inquired if appellant had seen anything of the hogs which he had shown him. Appellant said he did not know anything about them and had not seen them. Afterwards Kendle met Johnnie Richards, who informed him that he had seen appellant driving the hogs. Kendle went to appellant and told him that he (appellant) had his hogs, and that he had to bring them back or pay for them. That appellant said he

would pay for them and would leave the money at the butcher shop. That he failed to leave the money at the butcher shop. That Kendle and his brother went to appellant's house and asked why he had not left the money at the butcher shop as agreed. Appellant said he did not have all the money, but would pay $10 and would pay the rest in a day or so. This was refused by Kendle, who a few days later went to town, and Walter Mickle, appellant's brother, paid him $20 in a check. That Kendle had given no one permission to take the hogs. John Richards testified that he saw the appellant drive four hogs along about 100 yards from where he was; that they looked like Kendle's hogs, and he thought that they were Kendle's hogs, but was not positive. Walter Kendle, brother of the complaining witness, corroborated him with reference to the offer of appellant to pay $10 for the hogs. Appellant denied that he had taken Kendle's hogs, or that he had ever offered to pay for the hogs, and produced testimony showing that he had lived in Kendle's neighborhood, had raised hogs, and that he had brought some hogs from that neighborhood in his own mark, had penned them, and kept them in the pen several weeks; that when Kendle came to him he had told him that, if he could produce the man who had seen him driving Kendle's hogs, he would pay for them; that he had never authorized his brother to pay for these hogs, because they were his (appellant's), and further testified (which was contradicted by Kendle) that he had told Kendle where the hogs in dispute were and asked him to go see them, which Kendle refused to do. Upon this state of evidence, under the instructions of the court, appellant was convicted and sentenced to the penitentiary for two years. It is true that on the record no special instructions were asked by appellant of the court below, and all the instructions of the court seem to have been recognized as proper by appellant in his trial. Under the evidence, but four things were shown against this appellant:

First, that the prosecuting witness (Kendle) lost four white hogs in the Central district of Indian Territory about December, 1902; second, that the defendant (appellant) was seen driving four white hogs along the road; third, that appellant denied knowing anything about the hogs Kendle had lost, but promised to pay for them, if he had Kendle's hogs, and would leave the money for them at the butcher shop, which promise was denied, and afterwards offered Kendle $10 as part payment, which offer was also denied; fourth, that appellant's brother, without his consent, and against the wish of appellant, paid the prosecuting witness $20 in order to stop the fuss. No one, except a boy, John Richards, attempts to identify the hogs driven by defendant (appellant) as the hogs of the prosecuting witness, although the testimony of appellant is that he claimed the hogs Richards speaks of as his own, and shows such hogs to have been kept in appellant's hog pen subject to the view of his neighbors and of the prosecuting witness for a number of weeks, and that one of such hogs, at the time of trial, was still alive and in possession of the appellant. John Richards said he thought the hogs he saw appellant driving were Kendle's hogs, but was not positive; that he only saw them as appellant was driving them, and about 100 yards away.

Where, under this evidence, is there proof of any larceny? It is the duty of the government in a case of larceny to prove by evidence certain essential things: That within the jurisdiction of the court, and within the time of limitation of the law, the defendant stole, took, and carried away (as in this case) hogs of some value, and that such hogs were the property of some particular person, and that such taking was without the consent of the owner. Under this testimony, where is there any proof whatever that the hogs seen by Johnnie Richards were the hogs which were lost by the prosecuting witness? No one testified positively that these were Kendle's hogs.

Kendle himself never saw his hogs after he lost them, although, from the testimony, he could easily have gone to appellant's house and identified his hogs. On the motion for new trial appellant offered, if given an opportunity by new trial, to show that Kendle made contradictory statements to his testimony on the trial that he had never recovered his lost hogs; the statement made to one T. T. Neal being as follows: "Kendle said he had sold a hog   *   *   *   for $20. I asked him who he sold it to, and he said he heard that Ed. Mickle had stolen some of his hogs, and he wanted pay for them, and Ed. would not pay for them, and Walter Mickle paid him $20 to stop the racket, and a while after he received this money he found three of the hogs that he though Ed. Mickle had taken. I did not know there was any ·trouble about these hogs, and I didn't tell this until now." This affidavit was made March 22, 1905; the trial having been on March 15, 1905. Under ordinary conditions this affidavit might not be sufficient to cause a court to set aside a verdict on the ground of its being newly discovered evidence, where the facts of larceny were conclusively established; but, where the evidence is not conclusive, and where there is no identification of the property claimed to have been stolen, should not a court, under such circumstances involving the liberty of appellant, give heed to testimony, which, if true, shows beyond question that appellant was not guilty of the larceny of Kendle's hogs, and shows Kendle's mendacity, as newly discovered testimony? I think so.

I think the evidence in the case insufficient to warrant a conviction, and I think upon the motion for a new trial same should have been granted, and that it was error in the court below not to have granted a new trial in this case.