## REYNOLDS VS. HOLLAND, as Sheriff.

1. STATUTES: *Rule for construction of.*

   In construing a statute, the question for the courts is, what did the legislature really intend to direct; and this intention must be sought in the whole of the act taken together, and other acts in *pari materia.* If the language be plain, unambiguous and uncontrolled by other parts of the act, or other acts or laws upon the same subject, the courts can not give it a different meaning to subserve a public policy or to maintain its constitutional validity. The literal meaning of words will be disregarded, when it is obvious from the act itself that the use of the word was a clerical error, or that the legislature intended it in a different sense from its common meaning.

2. COUNTY LINES: *Power of legislature to change.*

   The power to change county lines is inherent in the legislature, subject to express constitutional restrictions, and the essential requisites of the state which are implied in our frame of government. The consent of a majority of the voters in the part taken off, is only required in the case of new counties to be formed out of portions of old ones.

APPEAL from *Chicot* Circuit Court.

Hon. T. F. SORRELLS, Circuit Judge.

*Reynolds,* for appellant.

*Pindall, contra.*

EAKIN, J.   Appellant recovered judgment in the Chicot circuit court, against Watt C. Halley, on the sixteenth of January, 1868, upon which, on the eighteenth of July, he sued out execution.

The sheriff returned no property found. Appellant sued out an alias, and pointed out to the sheriff lands of the defendant in the west half of section 29, in township 13 south, of range 2 west, upon which he requested him to levy. The sheriff refused, upon the ground that the lands

were not within his county, and made 'return of this reason upon the writ.

Appellant then filed in court a petition for a mandamus to compel the levy, to which the defendant responded, relying upon the act of February 10, 1879.

The court dismissed the petition, and Reynolds appealed.

The validity of the act above cited is all that is brought in question. No evidence upon either side appears to have been adduced.

By the act establishing the county of Drew, passed November 26, 1846 (sec. 17), all that portion of township 11 south, included in west ranges 2, 3, 4 and 5, the east half of range 6, and so much of range 1 as lay south of Cypress bayou, "*except sections 32 and 33*," were taken from Chicot county and added to Desha. This left the former county to consist of all the territory in the state lying south of the line between townships 11 and 12 south, and east of the range line between 3 and 4 west, *together with* the two sections above excepted (and, perhaps, a small fraction of section 31). These two sections lay contiguous to the body of the county, on the north, and, as appears from the United States government surveys, upon the Mississippi river. Their exception in the act of 1846, in the absence of other evidence, and in view of the fact that they were not necessary to make up the constitutional area of Chicot county, raised a presumption of their importance to the county, which the courts are not authorized in overlooking.

The act in question (February 10, 1879), was passed, as its title expresses, "to change the boundary line between the counties of Chicot and Desha." Section 1 provides, "That the boundary line between the counties of Chicot and Desha, in the State of Arkansas, be, and it is hereby,

changed; and that all that portion of Chicot county comprised within the following limits, to wit: township 12 south, range 1 west; township 12 south, range 2 west; township 12 south, range 3 west; fractional sections 4, 5, 8 and 17, in township 13 south, range 1 west; township 13 south, range 2 west; sections 1 to 18, inclusive, in township 13 south, range 3 west, be and the same is hereby detached from the county of Chicot, and attached and added to the county of Desha."

No provisions are made in the act for distribution of the burden of the debt of Chicot, or for the transfer of causes pending in her courts.

If the force of the act is to be confined strictly to the literal import of the language, it would leave, as still belonging to Chicot, the sections 32 and 33, in township 11 south. They are not transferred *eo nomine.* This would leave Chicot consisting of two detached parts, not contiguous at any point, and with a considerable portion of Desha intervening.

It is nowhere provided in the constitution, in express language, that counties shall consist of contiguous territory, lying in a body. Neither is there any description of counties, nor express provision of any kind for their organization. They are presupposed. They underlie all the free governments of the American states. They are essential to political representation, and to the administration of justice, through the courts, as well as to local police. Their nature, organization, and functions, are supposed to be so well known, and are, and have been for nearly a thousand years, so well understood, that it is not considered necessary in constitutions to lay the foundations of the government by providing for them. They are taken for granted, as essential foundation stones in our free system of represen-

tative government, and no constitutional provisions of an affirmative character, regarding them, are made. The provisions are restrictive on the legislative body. But express restrictions for their protection do not remove those which spring from the essential nature of these organizations. The legislature has no power to *destroy the system*, if it can be done without violating express prohibitions, but it can mould these political organizations, and define their boundaries, and impose upon them duties and obligations, within the scope of their general purposes, as presupposed by the constitution.

A little reflection will make it clear that the system of counties, to be efficient, must include the idea that they shall be composed of contiguous bodies of territory. This needs no argument.

It would not do to have a county composed of separate parcels of land, in separate portions of the state, like a small German principality. The idea is inconsistent with our form of government through county organizations. If the legislature intended to retain sections 32 and 33 as parts of Chicot, they can not be neglected as of too small importance for consideration. The doctrine, *de minimis*, etc., is precluded by the act of 1846. The act of February 10, 1879, would in that view be void, as an attempt to abrogate and destroy an essential feature of the government, to-wit, the division of the state into solid counties of contiguous territory. It becomes a question of intention, to be reached by construction.

The rule to be applied in this view, is: First—That the intention is to be sought in the whole of the act taken together, and in other acts in *pari materia*. If the language be plain, unambiguous, and uncontrolled by other parts of the act, or other acts or laws upon the same subject, the

1 STATUTES: Rule for construction of.

courts can not give it a different meaning to subserve a public policy, or to maintain its constitutional validity. The question for the courts is not what would be wise, politic and just, but what did the legislature *really mean to direct*. This narrow circle embraces and circumscribes the whole ambit of the court, although within that it may move very freely in catching the intention. It may disregard the literal meaning of words, when it is obvious from the act itself that the use of the word has been a clerical error, or that the legislature intended it in a sense different from its common meaning. This was done by this court at the last May term, in the case of *Haney v. The State, 34 Ark., 263*.

The title of this act affords the clue to its intention. It was to *change the boundary line* between the two counties. It was not so much the specific intent of the legislature to transfer to Desha county the particular sections and townships designated, from anything peculiar to them, but rather to use them as the most convenient means of *describing a line* to constitute the boundary between the two counties. A view of the plat of the government surveys, with the cognizance this court has of former boundaries, shows that this *new line* is very clearly established by the act, running entirely through and across the northern portion of Chicot, and making a clear division between that county and Desha. Enough territory is mentioned to fix the line, although *all* is not mentioned which lies north of it, and which must go with the other to make a line. This carries out the clear intention and makes a boundary line between the counties. The literal construction would not make a boundary line between the counties at all, but would leave their territories intermingled. This would be not only absurd but unconstitutional. We must not attribute such an

Reynolds vs. Holland, as Sheriff.

intent to the legislature, when a plain, clear, constitutional intent can be derived from the act itself.

There are numerous decisions, which may be found collected under note "*a*" to page 255 of Mr. Sedgwick's work of Const. and Stat. Law, 2d ed., to show that the *intent and spirit* of the act, and not the literal meaning, must govern, where absurd consequences would otherwise follow. It is only necessary, upon the other hand, that the courts should take care to find the intent and spirit in the act itself, or in laws in *pari materia*, and not in their own views of policy.

It is no objection to the validity of the act that it made no provision for apportioning the burden of the debt of Chicot, or the transfer of causes in the courts. These matters do not affect the essential nature and functions of counties in our system, and are within legislative control. The power to change county lines is inherent in the legislature, subject to express constitutional restrictions, and the essential requisites of the state which are implied in our frame of government. See case of *Eagle et al. v. Beard,* *33 Ark., 497.* {margin: 2. COUNTY LINES: Power of legislature to change.}

The consent of a majority of the voters in the part taken off is only required in the case of new counties to be formed out of portions of old ones. {margin: Consent of inhabitants.}

The mandamus was properly refused.

Affirm.