BEARD ·v. ALBRITTON.

Opinion delivered October 27, 1930.

*Thomas W. Hardy,* for appellant.

*Powell, Smead & Knox,* for appellee.

MEHAFFY, J.  The appellees filed a petition with the county board of education of Ouachita County, alleging that they were a majority of the qualified electors residing in School Districts No. 1 and No. 50 of Ouachita County and asking that the boundary lines of said District No. 1 be changed so as to include within said School District No. 1 all of the territory now comprising said School District No. 50, which district adjoins No. 1. Then followed a description of the territory of No. 50 by sections.  A plat was attached to the petition and made part of it.  This petition was filed on December 2, 1929, and notice of the proposed change on October 31, 1929, more than 30 days before the petition was filed.  The petition was signed by J. A. Gaston and 104 others.  The appellants filed a remonstrance signed by J. S. Beard and 21 others.  One of the grounds for opposing the change was that the children of the remonstrants would be compelled to go a distance of from 12 to 15 miles to attend school, and it would be virtually denying school facilities to a great many children.  It was further alleged that the

children would have to cross District No. 61 in order to get to the school; that they would have to cross Freeo Creek, which is sometimes impassable. There was no evidence to support these allegations, and these questions are not before the court. It was alleged that a majority of the patrons of School District No. 50 opposed the consolidation. The remonstrants alleged that the notice given was not in compliance with the statute in that it was not a geographical description of the territory to be embraced in the proposed new district. That there was no geographical description of the territory embraced in District No. 1, and that the petition did not contain a geographical description of the territory to be created. The county board of education on December 2, 1929, after reciting its finding of facts, made the order changing the boundary so that District No. 1 included all of the territory of both No. 1 and No. 50. Other orders were made with reference to the transfer of funds. After the decision of the board of education, an affidavit and bond for appeal to the circuit court was filed by remonstrants, and in the circuit court a demurrer was filed which was by the court overruled. The following stipulation was entered into by counsel:

"It is stipulated and agreed between counsel for the parties that the notices of the application to the board of education, a copy of which is contained in the transcript in this case, were posted in the time and manner and in number as required by law. That the petition which was filed with the county board of education herein, a copy of which is included in the transcript herein, is signed by a majority of the qualified electors of the territory affected by the petition and the order of the board of education. That the order made by the county board of education, which was appealed from, contemplates that the district formed by the order of the county board of education shall include all of what was formerly School District Number 1 of Ouachita County, Arkansas, and all of School District Number 50, of Ouachita County, Arkan-

sas. That, while said petition does contain a majority of the qualified elector of both of said School Districts No. 1 and 50, it does not contain a majority of the qualified electors of said School District No. 50. That the agreement herein, to the effect that the notices were given in time and manner and number, as required by law, does not mean, and is not an admission, that the description of property contained therein is according to law.''

The case was tried in circuit court on February 27, and the circuit court after a recital of the facts found by it, ordered that the new School District No. 1 be established and created as ordered by the county board of education consisting of the territory set forth. Motion for new trial was filed, overruled and exceptions saved. This appeal is prosecuted to reverse the judgment of the circuit court.

It is first contended by the appellants that the notices given did not contain a geographical description of the territory to be embraced in the district. The boundaries of both No. 1 and No. 50 were of course well known and describing them as Districts No. 1 and No. 50, of Ouachita County, Arkansas, would be a geographical description of the territory. The notice and petition as contended by appellant must be in compliance with the statute, but to describe the territory as District No. 1 of Ouachita County, Arkansas, would give all the information to persons entitled to know that a description by sections or by metes and bounds would give, and the purpose of notice of course is to advise persons interested as to the territory affected. If the formation of a new district took a portion of one district or all of one district and part of another, it would of course be necessary to describe the part taken. To say that a part of District No. 50 was taken would be no description at all, and the law requires that there must be a geographical description; but when it is described as District No. 1 or District No. 50, this is a complete description and a geographical description, and the notice and petition would have been

valid, and there would have been a substantial compliance with the statute if it had described each district by number only.

We agree with the appellants in their contention that the giving of the notice prescribed by statute was a prerequisite to the exercise of jurisdiction and that a failure to comply with the statute would make the organization invalid, but we do not agree that describing a district as No. 1 or No. 50 is not a geographical description. It is also contended that the petition is defective because it does not contain a geographical description of the territory, but what is said with reference to geographical description contained in the notice is applicable to the petition also.

This court, prior to the passage of act 156 of the Acts of 1927, had held that boards of education had no jurisdiction to annex territory comprising a special rural district created by special act. In *School District No. 25 v. Pyatt*, 172 Ark. 602, 289 S. W. 778, we said: "The only question to be determined is whether the county board of education can change the boundary line of a district created by special act of the Legislature. This court has several times held that a school district is the creature of the Legislature, or of some governmental agency named by the Legislature. This court has said: 'The Legislature is primarily vested with the power to create school districts, and it may create or abolish a school district, or change the boundaries of those established, for any reason that may be satisfactory to it. The Legislature may do this without consulting and without obtaining the assent of those persons who reside in the territory affected.' " In that case we also said: "Again it has been said repeatedly that, in all cases, the legislative control over the creation and boundaries of school districts is plenary, subject only, however, to the limitation that such action shall not impair the contracts or obligations of such districts. The Legislature has full power, it may organize a district itself, and may do so

without the consent of the inhabitants of the district, or it may authorize the county court or board of education or other governmental agency to form districts and change boundary lines; but, when the Legislature itself creates a district, of course, it cannot be said that it authorizes any governmental agency to change the boundaries of a district so created, and neither the county board of education nor any other agency would have authority to change the boundaries of a school district created by the Legislature, unless the Legislature expressly authorized such agency to do so."

This court has in a number of cases held that county boards of education have no authority to change the boundary lines of a school district established by special act of the Legislature. *Park* v. *Rural Special School Dist. No. 26*, 173 Ark. 514, 292 S. W. 697; *School District No. 25* v. *Pyatt Special School Dist.*, 172 Ark. 602, 289 S. W. 778; *McCrory Special School Dist.* v. *Curtis*, 174 Ark. 343, 295 S. W. 971.

These cases were all decided prior to the passage of act 156 of the Acts of 1927. In all of the cases, however, we held that the Legislature had plenary power, that it could authorize the boards of education or the courts to create school districts or that the Legislature itself could create school districts without the consent of the inhabitants of the territory affected. In a case decided after the passage of act 156 of the Acts of 1927, we reviewed the cases which had been decided before the passage of the act, and, in construing the act, we said: "It gives the board of education authority to change the boundary lines of any district, and we think it necessarily leaves to the board of education the manner in which it will do this. That is to say whether it will do it by consolidating school districts or otherwise. 'Any school district' is sufficiently broad and comprehensive to include any school district and every school district in the State." *Manley* v. *Moon*, 177 Ark. 260, 6 S. W. (2d) 281.

The questions argued by appellant have been settled by the above case. It is agreed in this case that the peti-

tion contains a majority of the qualified electors of both of said School Districts No. 1 and No. 50, but that it does not contain a majority of the qualified electors of School District No. 50. The law requires not that the petition shall contain a majority of each district, but that it shall contain a majority of the qualified electors residing in the territory to be affected. Of course, in this case the territory to be affected is the entire territory embraced in No. 1 and No. 50.

"Said statute under which the proceeding was instituted was recently interpreted by this court in the case of *Manley* v. *Moon*, 177 Ark. 260, 6 S. W. (2d) 281, to mean that a majority of the electors in the districts to be affected, and not a majority of the electors in each district to be affected, was necessary in order to warrant the consolidation of the districts embraced in the petition. The trial court correctly construed the statute to mean that a majority of the electors in the districts embraced in the petition were necessary to obtain an order consolidating same. * * * The county board of education is authorized by said act to form new school districts and to change the boundary lines between any school districts theretofore formed when a majority of the qualified electors in the territory to be affected sign and present a petition to the board for that purpose." *School Districts 14, 15 and 44* v. *County Board of Education*, 177 Ark. 734, 7 S. W. (2d) 798.

Judgment of the circuit court is affirmed.