## In re SCHOOL DISTRICT NO. 62.

No. 26972. June 15, 1937.

Champion, Champion & Fischl, for School District No. 62.

Marvin Shilling, for School District No. 74.

WELCH, J. This is an appeal from an order of the county court of Carter county dismissing plaintiff in error's appeal from an order of the county superintendent of said county. The facts necessary for a determination of this appeal are as follows: The county superintendent of Carter county changed the boundary line of school district No. 62 of said county, by detaching from said district three quarter sections of land, which he attached to adjoining consolidated school district No. 74. More than one-fourth of the taxpayers residing in district No. 62 signed and filed notice of 'appeal, and such appeal was lodged in the county court. Both parties to the appeal to this court admit the only question here

involved is a proper construction of section 6779, O. S. 1931, which provides:

"If the appeal be from any order pertaining to the boundary of any school district, the appeal may be taken by one-fourth of the taxpayers residing in the territory affected by filing the notice of appeal hereinafter provided for. * * *" (The quotation is from section 2, of chapter 34, article 1, S. L. 1931.)

In taking the appeal from the county superintendent of public instruction the notice of appeal was signed by more than one-fourth of the taxpayers residing in district No. 62, but only one of them was a taxpayer in the acreage sought to be detached from school district No. 62 and attached to school district No. 74. None of the persons signing the notice of appeal were residents or taxpayers in school district No. 74.

The appellees in the county court contended that the appeal to the county court should be dismissed because the notice of appeal to that court was not signed by one-fourth of the resident taxpayers in the acreage or territory sought to be detached from school district No. 62 and attached to district No. 74, and that contention appears to have been followed by the county court in sustaining the motion to dismiss the appeal. The appellant in the county court, and plaintiff in error here, contends that school district No. 62 was "territory affected" and that within the legislative meaning and intent the notice of appeal to the county court signed by more than one-fourth of the taxpayers residing in school district No. 62 was sufficient.

Thus, it is apparent that we must determine the legislative intent in the use of the term "territory affected" in the act above referred to. It is apparent, of course, that the acreage sought to be transferred from one school district to the other is itself "affected" by the transfer, and we are cited to decisions from other states which would indicate that both school districts are "affected" when acreage or territory is to be taken from one school district and attached to the other. We are not cited to any decisions of this court or any other court which holds that the school district from which territory is detached is affected or is not affected by such detachment or transfer; the exact question seems not to have been passed upon. But to state the matter would seem to also determine it. Undoubtedly school district No. 62 was "affected" by the order of the county superintendent detaching certain specific acreage from that school district, and if the district was af-

fected, then the territory of the district would be "territory affected" by such action of the county superintendent.

Section 6771, O. S. 1931, while it was fully in force, provided that in case of a change of boundary line between school districts the appeal could be taken by one-fourth of the qualified electors in the district affected by such change, to the board of county commissioners. It appears to us that in adopting chapter 34, article 1, S. L. 1931, the primary legislative intent was to change the forum to which the appeal should be taken under section 6771, and that change was accordingly made to provide that the appeal should be taken to the county court instead of to the board of county commissioners, thus providing for a trial of the contest in court. The latter act indicates no intent to further restrict the right of appeal, but, on the contrary, if any change in that respect is indicated, then there is indicated a legislative intent to broaden the right of the people to appeal, since chapter 34, article 1, S. L. 1931, opens with these words:

"Any person or persons feeling aggrieved at any order or decision of the county superintendent * * * pertaining to or affecting the boundary of any * * * district * * * may appeal. * * *"

The second section then continues in effect the provision as to the percentage of taxpayers necessary to sign the notice of appeal, and makes the one-fourth per cent. to apply to "territory affected" instead of applying to "any district affected by such change," as in the prior provision, section 6771.

To adopt the contention presented by the appellees in the county court and sought to be upheld here would be to hold that the sole right of appeal was lodged in the taxpayers residing in the tract of 480 acres of land sought to be transferred from one school district to another. We cannot find in the legislative enactment any intention to make such a radical change from the rights theretofore existing to appeal, nor any legislative intent to so radically restrict the right of appeal as to take that right away from other taxpayers who might in some instances be themselves seriously affected by such a transfer. It may be that school district No. 74 was "territory affected" by this transfer of acreage, and it may be that all of the territory included in both districts 62 and 74 was affected by this transfer of acreage, or change in boundary line. But the exact question before us is whether or not school

district No. 62 was affected, or whether the territory of that district was "territory affected" by this action of the county superintendent.

Although there is no exact precedent cited, we find no difficulty in determining, and we hold that an order of the county superintendent detaching any amount of acreage or territory from a school district affects that school district, and that the territory of that district is "territory affected" by such an order.

An examination of all of the legislative acts referred to convinces us that in this case an appeal to the county court could be taken upon notice signed by one-fourth of the taxpayers residing in school district No. 62, and that such right of appeal in such manner is well within the legislative intent evidenced by the 1931 act referred to. If the 1931 act required that the notice of appeal be signed by one-fourth of the taxpayers residing in all of the "territory affected," then the act might indicate an intention that, as applied to the facts in this case, the appeal could only be taken upon notice signed by a full one-fourth of all the resident taxpayers in both districts 62 and 74. While it is true the act does not specifically authorize the appeal upon notice signed by one-fourth of the resident taxpayers in part of the territory affected, yet we conclude that school district No. 62 itself is territory affected within the meaning of the act, and that it was clearly the legislative intent to authorize the appeal on notice signed by one-fourth of the resident taxpayers therein. Certainly, if the Legislature had intended, as the defendant in error urges, that the appeal could only be taken on notice signed by the proper number of resident taxpayers in the acreage or tract sought to be transferred, that intent could have been clearly expressed with no difficulty. We cannot follow that contention of the defendant in error.

In a subsequent brief the defendant in error suggests that the term "territory affected," as used in the 1931 act, might be construed here to mean all of the territory of both school districts, but makes it plain that is his second thought, and he still insists that the correct ruling would be that the right of appeal lies only with those resident taxpayers within the acreage sought to be changed from one district to the other.

There are decisions of our own court which are not directly in point, but they are interesting in their treatment of the right to appeal in school district matters. In School District No. 6, McClain County v. Board of County Commissioners, 108 Okla. 254, 236 P. 21, the court considered the right of appeal under section 10321, C. O. S. 1921, which is section 6771, O. S. 1931. The right to appeal was questioned because not provided for by statute, the section in question expressly providing for an appeal in case of change of district or change of boundary, but making no specific provision for appeal in case of refusal by the county superintendent to change the district. The court, after stating the question, used this language:

"This brings us to the inquiry whether the Legislature intended to give the right of appeal only to those who opposed the creation of a new district after such petition had been acted upon favorably to the petitioners who seek to create a new district."

The court then quoted section 51, article 5, and section 6, article 2, of our Constitution and reasoned to the conclusion that the Legislature did not intend to provide for an appeal when the county superintendent granted a request for change of district, but to deny the right of appeal when the county superintendent refused to make a requested change in districts. The court in the body of the opinion said:

"We do not believe that the Legislature intended such a construction upon the section under discussion, and we therefore hold that the statute permits an appeal from the county superintendent in denying to the petitioners the creation of a new district."

In Graves et al. v. Bowles, 135 Okla. 109, 274 P. 467, this court considered an appeal under section 10405, C. O. S. 1921, which is 6860, O. S. 1931, as to the right to appeal and the proper method of taking the appeal. That section provides that any party should have the right of appeal "as provided for appealing from the decision of such county superintendent in changing the boundaries of other school districts." It was agreed, as stated in the opinion, that the above-quoted portion of the statute referred to was controlled by section 10321, C. O. S. 1921 (which is section 6771, O. S. 1931), as to taking the appeal. In the Graves Case the county superintendent had made an order attaching a portion of school district No. 9 to Tulsa city school district, and the remaining or balance of district No. 9 to Jenks city school district. The notice of appeal was signed by seven qualified electors of the territory ordered

attached to the Tulsa school district, but they did not constitute one-fourth of the qualified electors of school district No. 9, nor of the area or territory ordered annexed to Tulsa city school district. Thus it is seen that the parties there appealing from the action of the county superintendent were said in the first-mentioned section of the statute to have the right of appeal, but they had not complied with the provisions of the controlling section 6771 as to the requisite number of signers of the notice to appeal. Nevertheless the court there sustained the appeal from the action of the county superintendent. In the body of the opinion this court said:

"It is contended by the defendants, and so held by the trial court, that no less than one-fourth of the qualified electors of the territory affected by such change might appeal. The plaintiffs contend that no such limitation exists under section 10405, that the limitation as to the number who may appeal, as provided by section 10321, had no application to the latter section.

"We find no decision and none is called to our attention which decides the question presented in this cause. However, this court in the case of School District No. 6, McClain County, v. Board of County Commissioners, 108 Okla. 254, 236 P. 21, which case involved the question of the right of appeal in cases where the county superintendent refused to change a district, cited and quoted with approval the following provisions of our Constitution and from an Illinois case, which authorities we consider appropriate in the instant case.

" 'The Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges or immunities within this state.' Section 51, art. 5, Constitution of Oklahoma.

" ' "The courts of justice of the state shall be open to every person and speedy and certain remedy afforded for every wrong and for every injury to person, property or reputation: and right and justice shall be administered without sale, denial, delay or prejudice." Section 6, art. 2, Constitution of Oklahoma. * * *

" ' "Statutes giving the right of appeal should be liberally construed in furtherance of justice, and a statute which, literally construed, gives an appeal to only one party, should be construed. if possible, so as to give the same right to the other party." ' People v. Sholem et al., 238 Ill. 203, 87 N. E. 390.

"Where no hearing is provided for by statute to an aggrieved or interested party, prior to entry of an order affecting him, a liberal rather than a restricted or limited right of appeal should be applied under the provisions of our Constitution and statutes. * * *"

Now applying that reasoning to the case at bar, we find that chapter 34, article 1, S. L. 1931, quoted earlier in this opinion, gives the right of appeal to "any person or persons feeling aggrieved," etc., but as in the Graves Case, supra, that right is controlled by the next succeeding section as to the method of taking the appeal. If the appeal in the Graves Case, supra, taken upon notice signed by less than one-fourth of the taxpayers residing in one of the districts affected by the action of the county superintendent and signed by less than one-fourth of the resident taxpayers of the area or territory detached from one district and attached to the other district, was a valid appeal, then it seems equally as logical to hold that in the case at bar the appeal taken upon notice signed by more than one-fourth of the taxpayers residing in school district No. 62 was a valid appeal.

It is not unfair to assume from the record here that district No. 74, and the residents and taxpayers thereof, are satisfied with the boundary change and do not desire to contest the same or to appeal from the order, while at least a sufficient number of resident taxpayers of district No. 62 oppose the ordered change and desire to appeal therefrom to the court. The record does affirmatively show that the school board of district No. 74 favors the transfer and that the school board of district No. 62 opposes it. We would do violence to the reasoning in the Graves Case, supra, and to the constitutional provisions as therein discussed and followed, if we here hold that the Legislature intended to grant the right of appeal to aggrieved taxpayers of district No. 62 only if an equal percentage or a sufficient number of the taxpayers of district No. 74 would join therein.

Partly by suggestion in the brief, and partly by our own investigation, our attention is directed to the following cases from Arkansas, Minnesota, and South Dakota: School District No. 74 v. Board of Commissioners of Lincoln County, 9 S. D. 291, 68 N. W. 746; Appeal of Common School Districts Nos. 16, 45, and 94, Dakota County, 158 Minn. 317, 197 N. W. 742; Consolidated School District No. 2 v. Special School District No. 19, 179 Ark. 822, 18 S. W. (2d) 349; Beard et al. v. Albritton, 182 Ark. 538, 31 S. W. (2d) 959; In re Dahlgren, 134 Minn. 82, 158 N. W. 729, and Manley v. Moon, 177 Ark. 260, 6 S. W. (2d) 281.

These cases are not in point, as they do

not deal with the right of appeal. In each case the question considered was the sufficiency of the original petition for a change of boundary or change of districts and neither of said decisions deals in any manner with the right of appeal to the courts or the manner or method of taking an appeal from the action of the county superintendent. The statutes considered in these decisions require certain petitions to institute the proceeding for the change in the first place. In those cases the court followed the statutes of those states, and required petitions with a certain percentage of taxpayers from all of the territory affected or to be in any manner affected by the proposed change. If the rule of those cases be applied as the law in this state in reference to commencement of proceedings for change in district boundary, then the proceeding for change in this case would be wholly invalid, 'as the original petition here was not signed as those decisions held that such petitions must be signed in those states.

However, the fact is that our statutes require no such petition to commence a proceeding for change of district boundary. Section 6771, O. S. 1931, authorizes the county superintendent of public instruction to make boundary changes, 'and does not as a condition precedent require such petitions as was considered in the foregoing cases from Arkansas, Minnesota, and South Dakota. We observe further that the right of appeal and the method and manner of taking it is quite liberal in those states. See Sorknes v. Board of County Commissioners (Minn.) 154 N. W. 669. And there is nothing to indicate that the courts of Arkansas, Minnesota, and South Dakota would apply to cases concerning the right of appeal the reasoning and rules which they do apply in the foregoing cases to the requirement of a petition for change in the first instance.

In fairness we should here state that the defendant in error in the case at bar does not contend that the rule of the foregoing cases from Arkansas, Minnesota, and South Dakota should be applied as a test of the validity of this appeal from the county superintendent to the county court. That is, the defendant in error did not contend in the county court, and does not contend here, that the appeal in this case was invalid because the notice was not signed by 25 per cent. of the aggregate number of resident taxpayers in both district No. 62 and No. 74. The defendant in error in the original brief makes it plain that it is contended that the right of appeal in this case is extended only to the resident taxpayers of that particular acreage or area sought to be detached from school district No. 62. And in a subsequent brief recently filed that contention of the defendant in error is again made plain, and that view was adopted by the trial court, as shown in the original brief of the defendant in error.

From a consideration of all of our statutory provisions applicable to school district boundaries, and appeals from orders made in reference thereto, and a consideration of the former decisions of this court concerning the right of appeal, we are convinced that the Legislature did not intend to grant the right of appeal **only** to the resident taxpayers of the acreage or area transferred, and did not intend to grant the right of appeal to the complaining or contesting district only if the other district joined therein. We are convinced that the provisions of chapter 34, article 1, S. L. 1931, as applied to the facts in this case, do permit 'an appeal to be taken upon notice signed by one-fourth of the resident taxpayers of district No. 62.

It is our specific duty, under our former decisions above referred to, to give a liberal construction rather than a restricted construction to the constitutional and statutory provisions for appeals in such cases. It must be observed that the sustaining of the right to appeal does not mean that thereby the change deemed desirable by the county superintendent is defeated. The sustaining of the right to appeal merely means the preservation of the right of interested and complaining parties to have a trial of the matter in court. The denial of the right to appeal here would, under the former decisions of this court, amount to a denial of constitutional and statutory rights. This court is not authorized or justified in decreeing such a denial.

For these reasons, we find that the appeal was properly taken in this case, and the judgment of the county court dismissing the appeal is therefore reversed, and the cause remanded to that court, with directions to deny motion to dismiss and to proceed with the trial of the case in that court.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, BUSBY, CORN, GIBSON, and HURST, JJ., concur. PHELPS, J., dissents.

PHELPS, J., (dissenting). I agree with

that part of the opinion holding that "the territory affected" does not mean merely that area which was changed from one school district to the other, and I consider it unfortunate that counsel for defendant in error, who rightfully should have prevailed in this case, erroneously insisted upon his own unsupported interpretation to that effect, while the correct construction of the words, as without exception defined by the courts of our sister states, should have enabled him to prevail. The number of signers of the notice of appeal was less than one-fourth of the taxpayers residing in the shifted area, but was also less than one-fourth of the total taxpayers residing in both districts, and for the latter reason this judgment should have been affirmed.

There are a number of reasons why the majority opinion is incorrect and I shall briefly mention them, before calling attention to the unanimity of decisions from other jurisdictions to the contrary of the majority opinion, which authorities the majority opinion attempts to dismiss with the statement that "they are not in point." As I interpret them, these opinions are squarely in point.

Section 6779 provides that if the appeal be from any order pertaining to the boundary of any school district, it may be taken by one-fourth of the taxpayers residing in, not any district affected, nor any territory affected, but in "the territory affected." By the simplest rules of inquiry the problem then is, what is "the territory affected"? The majority opinion, after copying the section, immediately drops the word "the", and, minus such word, proceeds to make the self-evident point that district 62 is "territory affected", and then bases its reasoning throughout on that point. Of course district 62 is "territory affected." District 74 is likewise "territory affected." So is every square foot of land occupied by any resident taxpayer in either district, wherever located, "territory affected." By the same reasoning any one person, being the only resident taxpayer on his own land, which likewise is affected territory, could appeal.

When the statute speaks of "taxpayers residing in the territory affected" it simply means taxpayers residing anywhere in the territory affected by the changing of the boundary. It is obvious that all taxpayers residing in either district are "affected," and it therefore is a self-evident truth that "taxpayers residing in the territory affected" means simply those in district 62

plus those in district 74. One-fourth of such taxpayers will then be one-fourth of the total number of taxpayers residing in both districts, regardless of the district or districts of their residence. (The appeal provided for is not by districts, but by resident taxpayers.) One-fourth of that number is required, and it makes no difference whether they all reside in district 62, or all in district 74, or part in one and part in the other.

The area which is detached from one district and attached to the other may be either a liability or an asset, depending upon the facts of the case. It may be high in taxable value and low in number of children to be transported and educated, in which case it is an asset. Conversely, it may be low in taxable value and high in number of children to be transported and educated, in which case it is a liability. The statute was framed so as to meet either situation.

I further agree with the majority opinion wherein it observes that section 6779 supersedes the former provision for appeals as laid down in section 6771. The former requirement, as conditioned in section 6771, required the notice to be signed by one-fourth of the qualified electors of "any district affected" by such change. The Legislature in that section defined the area as "any district affected" by such change, in words which are definite and clear. But it has changed those words. It now, in section 6779, defines the area as "the territory affected." The majority opinion holds, in effect, that the Legislature still means what it repealed, that is, that "the territory affected" means "any district affected," which is the very language which the Legislature changed, presumably with no intention in the world, according to the majority opinion, other than to convert a definite and certain phrase meaning into one less definite. If the Legislature meant "any district affected," why did it not leave those words in the statute? It so happens that when the Legislature changed the wording of this statute there were a number of cases in the books from other jurisdictions construing the phrase "the territory affected," which construction adopted the obvious and natural meaning of the words, and there was good and sufficient reason for requiring that the appeal be perfected by one-fourth of the taxpayers residing in "the territory affected" as properly construed. But even if such good reason did not exist, it would be improper for this court to substitute its own judgment as to

the propriety of the change for that of the lawmaking body. It is well settled that there is no appeal at all in such cases unless it is provided by statute. The conditions of appeal are within the discretion of the Legislature, regardless of whether we may agree with the wisdom or propriety thereof.

It is not for us to say that the Legislature intended one thing, when it very specifically said another. **"The** territory affected," does not mean **"any"** territory affected nor any **"district"** affected. It comprehends one territory, not any territory nor any "district." If a change in boundary between district 62 and district 74 is made, it affects all taxpayers residing in both districts. It may affect them beneficially in one district and detrimentally in the other, or the reverse. Nevertheless the fact remains that they are all affected. If there are a total of 100 taxpayers residing in district 62 and in district 74, they are "the taxpayers residing in **the territory affected."** One-fourth of said taxpayers would be 25 taxpayers. Twenty-five of such resident taxpayers, then, regardless of the district of their residence, are necessary for the appeal, according to the plain words of the statute. These truths are self-evident.

As part of its basis the majority opinion relies on the case of Graves v. Bowles, 135 Okla. 109, 274 P. 467. Let us look at that case. One statute involved therein provided that if any party or parties should object to the change of the boundary they should have the right of appeal, while another section provided that one-fourth of the qualified electors of "any district affected by such change may join in an appeal." (The latter section is now changed, see supra.) It was held in that case that since the one section provided that any party should have the right to appeal, and that since appeals are favored, it was not required that one-fourth of the electors residing in any district should join in the appeal, rendering meaningless the latter section. In other words, one person alone could appeal, if he so desired. I leave the merits of such reasoning to the appraisal of those who will take the time to read and properly analyze the case. It needs no comment. For that matter, the majority opinion could have been based on that decision, extreme as it is, and yet fared better at the hands of judicial analysis.

The majority opinion cites a number of decisions from Arkansas, Minnesota, and South Dakota. Those decisions passed upon the meaning of the phrase "the territory affected," or "territory to be affected," by the change of a school district boundary. The majority opinion says that those cases are not in point, "as they do not deal with the right of appeal." It may be conceded that they do not deal with the right of appeal, but they **do** deal with the question of what is meant by **"the territory affected"** by the change of a school district boundary. "The territory affected" by the change of said boundary is of course the territory affected thereby, regardless of whether the question arises in dealing with an appeal, or in dealing with the number of petitioners necessary for such change in the first instance. In those cases, as a condition precedent to the changing of a boundary, a certain fractional part of the number of persons residing in the territory affected by such change were required to petition therefor before the change could be made. In the case now before us a certain fractional part of the number of taxpayers residing in the territory affected by such change are required to join in the notice of appeal before the appeal can be had. Is "the territory affected" by the change in the boundary different in the two cases? Obviously not. The territory **affected by the change** remains the same, regardless of whether we are speaking of the number of signers necessary to obtain the change or necessary to perfect the appeal. The real question is what is meant by the phrase itself, and any such distinction as that attempted by the majority opinion is, as I view it, utterly impossible.

The cases hereinafter quoted all involved construction of the phrase "the territory affected" or the phrase "the territory to be affected" in connection with schools and school district statutes. In some cases the phrase is used, it is true, in connection with statutes providing the number of petitioners necessary to a change in boundary, or to the inclusion of new territory; or with reference to some other form of procedure; nevertheless in all such cases the fact remains that **the question being considered** was what is meant by the words "the territory affected."

7 Words & Phrases (3d Series) 446, says:

"The words 'territory affected' embrace the **whole** of the petitioning district **to** which lands are **attached,** and the **whole** of districts **from** which lands are **detached."**

The following is from 3 Words & Phrases (4th Series) 647:

"The 'territory to be affected' includes the entire territory embraced in the districts proposed to be consolidated."

Arkansas, Minnesota, and South Dakota have passed squarely on this question, and a number of other states have adopted the same construction with reference to analogous questions. We are the first to announce the rule laid down by the majority opinion. The South Dakota court in School District No. 74 v. Board of Commissioners, 9 S. D. 291, 68 N. W. 746, observed that:

"To change district boundaries, without affecting more than one district, is impossible"

—and the Minnesota court in Appeal of Common School Districts, etc., 158 Minn. 317, 197 N. W. 742, had the following to say:

"The 'territory affected' in such proceeding has heretofore been practically construed as embracing the whole of the district to which lands are attached and the whole of districts from which lands are detached. School Dist. No. 36 v. School Dist. 31, 134 Minn. 82, 158 N. W. 729. It is here claimed, as it was in the case just cited, that the act of the board was a benefit to the lands in Scott county as the taxable property and the number of the pupils in its district were increased. This line of argument was rejected in School Dist. 36 v. School Dist. 31, 134 Minn. 82, 158 N. W. 729. This argument is based upon the recognized fact that the land in Scott county is 'affected', but not injuriously. Clearly this land in Scott county is affected in the ordinary use of the word. The proceeding acts upon it. It operates on it. The acts concern it. It is impressed by the decision. It may be promoted by it. We think it is 'affected' by it. The land located in Scott county, which is a part of district No. 16, is affected in the same way. Moreover, this land is injuriously affected in this, that a part of district No. 16 is detached and taken away. This would apparently increase the burden on all land remaining in the district."

The Arkansas court, in Consolidated School Dist. No. 2 v. Special School District No. 19, 179 Ark. 822, 18 S. W. (2d) 349, at 351, construing a change in statutes such as we have in this state (as discussed supra), and particularly discussing what is meant by "the territory affected," said the following:

"As we see it, the language of Act No. 156 is broader in its terms than section 8823, which it amends, and requires, where the change is made in the boundary lines between any school districts formed, a majority, not only of the territory actually to be detached from one and added to the other, but also a majority of the qualified electors in the territory affected by the change is required. That, to our mind, is the clear meaning of the words used. Certainly, in this case, district No. 19 would be affected, for by the change of the territory its revenue would be diminished; district No. 2 would be affected because it would be burdened with an additional number of children to be educated, which might be entirely out of proportion with the additional revenue accruing to it. * * *

"As we have stated, the inhabitants of the strip of territory actually detached from one district and added to the other were not the only ones affected by the prayer of the petition and order of the court, but also the inhabitants of district No. 19 and district No. 2."

In Beard et al. v. Albritton, 182 Ark. 538, 31 S. W. (2d) 959, in a case where two districts were being consolidated, it was said in the syllabus that:

"The 'territory to be affected' includes the entire territory embraced in the districts proposed to be consolidated"

—and in the body of the opinion the following pertinent pronouncement was made:

"It is agreed in this case that the petition contains a majority of the qualified electors of both of said school districts No. 1 and No 50, but that it does not contain a majority of the qualified electors of school district No. 50. The law requires not that the petition shall contain a majority of each district, but that it shall contain a majority of the qualified electors residing in the territory to be affected. Of course in this case the territory to be affected is the entire territory embraced in No. 1 and No. 50."

Also see In re Dahlgren, 134 Minn. 82, 158 N. W. 729; Manley v. Moon, 177 Ark. 260, 6 S. W. (2d) 281, and, in particular, the discussion and cases cited at 56 C. J. 220, notes 35 to 38.

I conclude that the words "the territory affected" mean the whole of both districts, and that an appeal from an order of the county superintendent to the county court, under the provisions of section 6779, O. S. 1931, should be signed by a number equal to one-fourth of the total taxpayers residing in both districts, but that the notice should be regarded as sufficient if it is signed by one-fourth of said total, regardless of the district or districts in which the respective appellants reside. It appears to be conceded by the parties that in number the taxpayers who appealed to the county court were not as many as one-fourth of

the total number of taxpayers residing in both districts, and it therefore follows, in my opinion, that the judgment should be affirmed. For these reasons, I dissent from the majority opinion.