The Honorable Nick Wilson State Senator P.O. Box 525 Pocahontas, AR 72455
Dear Senator Wilson:
This is in response to your request for an opinion on several questions concerning a change in county boundaries. You state that the suburban improvement district of Cherokee Village is located primarily in Sharp County, but a portion is in Fulton County, and that the residents of Cherokee Village, Fulton County are interested in trying to change the Sharp County-Fulton County boundary so that they would be included in Sharp County. You indicate that after the transfer, Fulton County would still consist of more than 600 square miles.[1] Your first set of questions pertains to A.C.A. § 14-14-201(c) (1987), which states:
 No part of a county shall be taken off to form a new county, or a part thereof, without the consent of a majority of voters in the part to be taken off.
See also Ark. Const. art. 13, § 2.
Your questions in this regard are as follows:
 Would the transfer of the portion of Cherokee Village lying within Fulton County to Sharp County constitute the creation of a `new county, or a part thereof?' Would such a transfer require an election under subsection (c)?
The answer to both of these questions is, in my opinion, "no." It appears, from the facts stated in your correspondence, that no new county or part of a new county will be formed as a result of the proposed boundary change. The plain language of §14-14-201(c) supports the view that this provision will only apply in the case of new counties to be formed out of portions of old ones. This was the conclusion reached by the Arkansas Supreme Court in Reynolds v. Holland, 35 Ark. 56 (1879), wherein the court rejected a challenge to the validity of an act which changed the boundary line between two counties, thereby transferring territory from one to another. The court stated:
 The power to change county lines is inherent in the legislature, subject to express constitutional restrictions, and the essential requisites of the state which are implied in our frame of government. [Citation omitted.] The consent of a majority of the voters in the part taken off is only required in the case of new counties to be formed out of portions of old ones.
35 Ark. at 61. Although the court does not cite the relevant constitutional provision, it seems clear that the "express constitutional [restriction]" is found in Article 13, § 2 of the Arkansas Constitution, which states:
 No part of a county shall be taken off to form a new county or a part thereof without the consent of a majority of the voters in such part proposed to be taken off.
See also Pulaski County v. County Judge of Saline County,37 Ark. 339, 345 (1881). This constitutional inhibition is incorporated into A.C.A. § 14-14-201; and while there appear to be no cases of recent origin on point, I believe that the court would reach a similar conclusion today with regard to the legislative provision.
Your second set of questions involves A.C.A. § 14-14-203(a)(1)(A) (1987), which states:
 A petition signed by not less than fifteen percent (15%) of the legal voters residing in the areas to be affected by a proposed county boundary change may be submitted to the General Assembly for consideration.
You have asked:
 Do the words `legal voters residing in the areas to be affected by a proposed county boundary change' apply only to those residents of Cherokee Village who are located in Fulton County? Does it apply to other residents of Sharp County and Fulton County?
It is my opinion that the answers to these questions are: "no" to the first, and "yes" to the second. But a thorough resolution of the issues raised requires further discussion. The question arises: Must the petition be signed by 15% of the voters in the territory to be detached from Fulton County and added to Sharp County? Or does this language "15% of the legal voters residing in the areas to be affected" mean 15% of the voters of each of the counties to be affected or, alternatively, 15% of the aggregate number of voters in each county?
It is my opinion that if faced with the question, the Arkansas Supreme Court would, in all likelihood, construe §14-14-203(a)(1)(A) as requiring a petition signed by fifteen percent of the combined voters of both counties. While there appear to be no cases addressing, specifically, the petition requirement under § 14-14-203, the Court's probable approach to the issue can, in my opinion, be gleaned from its interpretation of similar statutory language concerning changes in school district boundaries. The case of Consolidated School Dist. No. 2v. Special School Dist. No. 19, 179 Ark. 822, 18 S.W. 349
(1929), is illustrative. The petitioners sought to detach territory from one district and add it to an adjacent district pursuant to the provisions of Act 156 of 1927 (repealed). The 1927 act required, in relevant part, a petition signed by "a majority of the qualified electors in the territory to be affected." 179 Ark. at 826. The petition in that instance was signed by a majority of the electors in the territory sought to be detached, but was not signed by a majority of the electors in either of the two districts involved, nor by a majority of the electors of the two districts combined. Id. at 823. The court first considered language in a prior statute requiring a petition of "a majority of all the electors residing upon the territory of the districts to be divided." Id. at 826, citing § 8823 of Cranford Moses' Digest. The court had, in a previous case, construed this language to mean a majority of the electors in the district to be divided. School District No. 45 v. SchoolDistrict No. 8, 119 Ark. 149, 177 S.W. 892 (1915). The Court inConsolidated School Dist. No. 2, supra, noted the 1927 amendment regarding "a majority of the qualified electors in the territory to be affected," and concluded:
 As we see it, the language of act No. 156 [of 1927] is broader in its terms than § 8823, supra, which it amends, and requires, where the change is made in the boundary lines between any school district formed, that a majority, not only of the territory actually to be detached from one and added to the other, but also a majority of the qualified electors in the territory affected by the change, is required. That, to our mind, is the clear meaning of the words used. Certainly, in this case, District No. 19 would be affected, for, by the change of the territory, its revenue would be diminished; District No. 2 would be affected, because it would be burdened with an additional number of children to be educated, which might be entirely out of proportion with the additional revenue accruing to it. It was the intention of the Legislature that no change of this kind should be made except with the consent of all parties concerned.
179 Ark. at 827.
The similarity in language between § 14-14-203(a)(1)(A) (fifteen percent of voters "residing in the areas to be affected") and the 1927 act (majority of qualified electors "in the territory to be affected") compels me to conclude that the court would reject the argument that a petition under § 14-14-203 is sufficient if signed only by fifteen of the voters in the area to be transferred. The court would, in my opinion, similarly reject the contention that § 14-14-203(a)(1)(A) requires a petition of fifteen percent of the voters in each county. The court inConsolidated School Dist. No. 2, supra at 828, cited with approval the case of School District No. 14 v. County Bd. ofEducation, 177 Ark. 734, 7 S.W.2d 798 (1928), wherein the court determined that the language of Act 156 of 1927 means ". . . a majority of the electors in the districts to be affected, and not a majority of the electors in each district to be affected."177 Ark. at 736, citing Manley v. Moon, 177 Ark. 260, 6 S.W.2d 281
(1928); see also Beard v. Albritton, 182 Ark. 538, 543,31 S.W.2d 959 (1930) (concluding, with regard to a petition signed by a majority of the qualified electors of the territory affected, but not by a majority of one of the districts, that: "[t]he law requires not that the petition shall contain a majority of each district, but that it shall contain a majority of the qualified electors residing in the territory to be affected.") Cf. School Dist. No. 10 v. Co. Bd. of Education,185 Ark. 328, 47 S.W.2d 606 (1932) (regarding § 44 of 1931, which required a majority petition from the electors of each district affected by the change in boundary lines.)
In conclusion, therefore, the cases involving school district boundary changes, by analogy, offer support for the proposition that § 14-14-203(a)(1)(A) requires a petition signed by fifteen percent of the combined voters of Sharp County and Fulton County.
With regard to your third question involving A.C.A. §14-14-203(a)(1)(B) (1987) ("[a] petition to form a new county shall be preceded by an election on the issue and consent by the majority of the voters in the part proposed to be taken off"), I do not believe that this provision is applicable in the case of a proposed transfer of certain territory from Fulton County to Sharp County. See above response to your first set of questions.
Your final question is asked with regard to A.C.A. § 14-14-204
(1987) which requires, under subsection (1), "[a] survey of the proposed boundary alterations, except where common boundaries are being dissolved." You have asked:
 Since all the boundaries of Cherokee Village have been surveyed and recorded and those same boundaries would be used in the transfer of Cherokee Village, Fulton County to Sharp County, can the existing survey be used to meet the requirements of § 14-14-204?
You note that it is your understanding that the survey was performed by a registered surveyor of the State of Arkansas. (This is required under A.C.A. § 14-14-204(2)).
This office has previously interpreted § 14-14-204(1) as requiring a survey where further action must be taken to establish an alternative boundary, other than the mere dissolution of an existing common boundary. See Op. Att'y. Gen.89-030. If, in this instance, Sharp County and Fulton County will be bounded by the Cherokee Village boundaries, with no need for any further boundary alteration, it is my opinion that a separate survey will not be necessary.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] In accordance with A.C.A. § 14-14-201(b)(1) (1987), no county may be reduced to an area of less than six hundred (600) square miles, nor to less than five thousand (5,000) inhabitants.See also Ark. Const. art. 13, § 1.