Paul RIVIERE, Secretary of State *v.*
John F. WELLS et al

80-172                                    604 S.W. 2d 560
Supreme Court of Arkansas
Opinion delivered September 12, 1980

208

*Steve Clark*, Atty. Gen., by: *W. Russell Meeks, III*, Deputy Atty. Gen., Little Rock, for appellant.

*James F. Lane*, Little Rock, for appellee.

*H. Clay Robinson*, Fort Smith; *Raymond R. Abramson*, Clarendon; *Allen Gordon*, Morrilton; *Robert A. Leflar*, Fayetteville; *Frank Huckaba*, Mountain Home; *Ralph Wilson, Jr.*, Osceola; and *Georgia Elrod*, Siloam Springs, amicus curiae.

JOHN A. FOGLEMAN, Chief Justice. Appellant, the Secretary of State of Arkansas, who has the duty of certifying the ballot for the General Election of 1980 to the Boards of Election Commissioners of the various counties of the state, brings this appeal questioning the decree of the Chancery Court of Pulaski County, holding that the ballot form for submission of the proposed Constitution of 1980 he was preparing to certify, was void and directing him to certify another form. We agree with the holding of the chancery court and affirm its decree.

The Arkansas Constitutional Convention of 1979 was

called pursuant to the vote of the majority of the legal voters who voted on the question at the general election in 1976, which had been submitted pursuant to Act 1177 of 1976. In execution of this expression of the will of the people, the ultimate sovereign, the General Assembly called the convention and provided for the selection of delegates, the assembling of the convention, and the time for certification of its final draft of a proposed new constitution to the Secretary of State. Act 3 of the First Extraordinary Session of the General Assembly held in 1977, as amended by Act 622 of 1979. As a part of the proposal certified to the Secretary of State, the convention included a proposed ballot form for submission of its proposal for a new constitution (to the people) in the general election to be held on November 4. This ballot form was:

PROPOSED CONSTITUTION OF 1980

FOR PROPOSED CONSTITUTION OF 1980

FOR RETENTION OF THE CONSTITUTION OF 1874

Appellees, John F. Wells and Independent Voters of Arkansas, Inc., an Arkansas corporation, as citizens and taxpayers, brought this action to enjoin appellant from certifying the ballot form proposed by the convention. They alleged that the convention's proposed ballot form was void. They asserted that they were acting to prevent an illegal exaction. No one now questions the standing of appellees to bring this action.[1] Appellant denied that the proposed ballot form was invalid or defective. By an amendment to their complaint, appellees asked for a reformation of the ballot form.

Appellant asserts only one point for reversal, but his argument is actually three-pronged. He first asserts that a judicial determination of the ballot form is invalid and in violation of Article IV, § 2 of the Constitution of Arkansas. Next, he argues that the applicable laws dealing with the

---

[1]It was stipulated that the chancery court had jurisdiction of the parties and the subject matter. *Harvey* v. *Ridgeway*, 248 Ark. 35, 450 S.W. 2d 281 and *Pryor* v. *Lowe*, 258 Ark. 188, 523 S.W. 2d 199 were actions by citizens and taxpayers.

powers of the Constitutional Convention of 1979 do not limit the convention's power to determine the ballot form to be used in submitting its proposed constitution to the people. Finally, he argues, the ballot form is not misleading. We disagree with each of these arguments. These arguments are intermingled and interrelated, so we will not treat them separately.

In asserting that this judicial determination violated the separation of powers mandated by the existing constitution, appellant first argues that the trial court impliedly found that the General Assembly should have provided a limitation on the power of the convention to prepare a ballot form, but, that as a matter of fact, there was no such limitation, even if it be conceded that a legislative limitation included in the act submitting the call to the people would have been valid. Appellant bases this argument upon the premises that there was no mention of the ballot form in Act 1177 of 1976 and that this act is the only one to be considered as the call by the people.

We have no difficulty in concluding that the chancellor was right. It is true that no legislative act pertaining to constitutional conventions contains a specifically worded form for submission of their proposals. It has been said that it is lawful for a convention to prescribe details for submission of constitutional changes recommended by it, in the absence of popular directions. Jameson on Constitutional Conventions (4th Ed.), p. 231. We find that there were popular directions. After the vote favoring the call of a constitutional convention, the General Assembly adopted Act 3 of the First Extraordinary Session of 1977. By § 7 of that act the General Assembly addressed the question of the time and manner of submission of the convention's proposal or proposals to the people. That section provided that the draft of the convention be submitted to the electorate *for approval or rejection*, either at a special election to be held in 1979 or at the 1980 general election. The act prescribed the exact form of the submission of the question to the electorate and it was submitted as prescribed, viz:

## INSTRUCTIONS TO VOTERS

The proposed constitution to be drafted by the Constitutional Convention of 1979 will be submitted to the electors for *approval or rejection* at a Special Election to be held on the second Tuesday in November, 1979, or at the General Election to be held in November, 1980, as determined by the preference of the electors. Mark an X opposite the vote of your preference, since a vote for both preferences will nullify your vote.

> FOR holding the election on the proposed Constitution at the general election to be held in November, 1980.

> FOR holding the election on the proposed Constitution at a special election to be held on the second Tuesday in November, 1979.

[Emphasis ours.]

Even if the vote of the people on this proposal in 1978 was not as much a part of the call of the convention as its vote in 1976, any limitation imposed by the General Assembly was ratified by the people. At the time of the vote to call the election, Ark. Stat. Ann. § 2-112 (Repl. 1976) was in full force and effect. It had required that a convention's proposal be submitted at a general election for *adoption or rejection*. Act 3 gave the voters the option of voting on the proposal or proposals at a special election. Any limitation on submission of the convention's product was ratified, either expressly or impliedly. Any such limitation would meet the tests imposed in *Pryor* v. *Lowe*, 258 Ark. 188, 523 S.W. 2d 199.

The limitation upon the power of the convention was that its proposals be submitted for *adoption or rejection,* or *approval or rejection*. See *Harvey* v. *Ridgeway*, 248 Ark. 35, 450 S.W. 2d 281; *Pryor* v. *Lowe*, supra. See also, Jameson on Constitutional Conventions (4th Ed.), p. 490. Clearly, the people intended that a voter be given a clear cut choice of voting for adoption (approval) or for rejection. Nothing in the question submitted to the people indicated that there would

be any opportunity for the statement of any other preference by a voter. The effect of a majority vote for adoption was stated in § 7 of Act 3. Likewise the effect of a vote "against the proposed constitution" was also clearly stated in that section, i.e., that the proposal "shall be deemed rejected by the electors," *and* the existing constitution of the state (not the Constitution of 1874), as amended, should continue to be the constitution of this state. Nowhere is it suggested that the voters should express a preference for the existing constitution, or the Constitution of 1874.

We find another basic premise of appellant's argument to be without merit. We find no violation of the doctrine of separation of powers in the action taken by the chancery court. That court did not impose a limitation upon the convention's powers. The ultimate sovereign, the people, in expressing their desire that the convention's proposals be submitted at the general election, certainly implied that the laws governing general elections be applied, insofar as possible. There has been judicial review of the method of presentation of questions on the ballot at general elections for many years. This has been done in connection with proposed constitutional amendments, initiated acts and referendums. See *Westbrook* v. *McDonald*, 184 Ark. 740, 43 S.W. 2d 356; *Newton* v. *Hall*, 196 Ark. 929, 120 S.W. 2d 364; *Johnson* v. *Hall*, 229 Ark. 404, 316 S.W. 2d 197; *Moore* v. *Hall*, 229 Ark. 411, 316 S.W. 2d 207; *Sturdy* v. *Hall*, 204 Ark. 785, 164 S.W. 2d 884. See also, *Berry* v. *Hall*, 232 Ark. 648, 339 S.W. 2d 433. The same principles which call for action by the judicial branch in those cases, in which there is no specific privision, either by statute or constitution, for judicial review of ballot titles, are applicable here. But, in any event, the courts may direct the action of officers of the executive branch, where their duty is clear and the exercise of discretion is not involved. See *Hardin, Comm.* v. *Cassinelli*, 204 Ark. 1016, 166 S.W. 2d 258, and cases therein cited. And actions of officers of the executive branch in the conduct of elections may be enjoined where they would constitute an illegal exaction by reason of expenditure of public funds in holding an unauthorized election. *Townes* v. *McCollum*, 221 Ark. 920, 256 S.W. 2d 716.

Appellant's reliance on *Wells* v. *Purcell*, 267 Ark. 456, 592

S.W. 100 and *Wells* v. *Riviere*, 269 Ark. 156, 599 S.W. 2d 375, as barring judicial action, is misplaced. It is true that, in those cases, we recognized that the courts could not control the action of the legislative branch, but it is clear that the doctrine of separation of powers does not prevent the judicial branch from passing on the validity of legislative acts which were unauthorized. We have held that a constitutional convention is not a coordinate branch of government. *Harvey* v. *Ridgeway*, supra. Even if it were, that would not bar judicial relief from actions beyond its authority.

The courts ought not to interfere, so long as a constitutional convention is acting within the scope of its duties in framing a constitution, no matter how much the convention appears to exceed its powers, but courts should interfere in matters outside the convention's proper functions to stop an ultra vires act as readily as they would stop such an act by any other department of government. Hoar, Constitutional Conventions, pp. 160, 229. If the convention was, indeed, completely autonomous, the courts should not have entertained the taxpayer's action in *Harvey* v. *Ridgeway*, supra, where the contention was made that the trial court had no jurisdiction to make a determination as to the eligibility of a legislator to serve as a delegate to a constitutional convention.

Appellant argues that the exercise of powers of the constitutional convention, once convened, is not subject to any branch of the government, and that the convention is responsible. only to the electorate, which may express its disapproval, not only of the contents of the convention's proposal, but the method of presentation thereof, when the proposed constitution is submitted at the general election. Even if we were to fully accept the basic premise of this argument, which we do not, we cannot agree with appellant that the people could disapprove the method of presentation by voting to reject the constitution proposed,[2] but it appears to us that the form of ballot proposed would preclude a vote to reject the

---

[2]It has been suggested in the briefs that the people have the same remedy with reference to unauthorized acts by the convention as they would for such acts by the legislature as set out in *Wells* v. *Purcell*, supra. Of course, the people cannot replace a delegate to the constitutional convention, because of the absence of any statutory authority or machinery.

proposal, except by indirection. We do not agree, as we will presently point out, that the ordinary voter would consider, as appellant does, that a vote not to approve was a vote to reject. The flaw in appellant's reasoning is that there is no space provided for an elector to vote to *reject* the proposed constitution, and we do not agree with appellant's argument that, because rejection of the proposed constitution would have the effect of retaining the present constitution, that a vote "FOR RETENTION OF THE ARKANSAS CONSTITUTION OF 1874" would be translated in the minds of many voters, into a vote to reject the 1980 proposal. In this respect, we agree with the chancellor that the form of ballot proposed by the convention is misleading. Undoubtedly, many voters who expressed their dissatisfaction with the existing constitution in voting to call a constitutional convention are still dissatisfied with it, but do not favor the 1980 proposal. Marking the ballot could present a problem to these voters and others of the same mind who are *for* neither document. For that reason, they might not vote at all.

The convention's statement of the alternaive to the proposed constitution is otherwise unclear. What does retention of the Arkansas Constitution of 1874 mean? In the first place what does "Constitution of 1874" mean to the average voter? It is extremely doubtful that it is clear to the average voter that the existing constitution is the Constitution of 1874 or that he is conscious of the date of its adoption. Even though the basic document was the Constitution of 1874, that constitution has been amended 58 times. These amendments have had considerable impact on the terms of that constitution as originally adopted. Members of the legal profession would not likely be misled in this respect, but their familiarity with the history and current content of the existing constitution far exceeds that of the average voter. Is the existing constitution the constitution of any particular year in the minds of some people? It has been suggested in our conference that even the word "retention" may well be foreign to the vocabulary of the average voter.

A voter is allowed only five minutes in the voting booth. Ark. Stat. Ann. § 3-711 (Repl. 1976). Consequently, ballot titles and ballot forms should be so worded that a voter need

not hesitate, before casting his vote, to ponder over its consequences so he can feel assured that he is casting it according to his actual desire. It has been said by a leading authority on constitutional conventions that, in determining the manner of submitting constitutions to the people two things should be kept in view, i.e., obtaining completely and, as far as possible, in detail, the public will and, secondarily, convenience. He adds that, if it were not nearly impracticable, the best mode would be to submit every distinct proposition in a proposed constitution separately, so that each voter could vote *yea* or *nay* upon it. Jameson on Constitutional Conventions (4th Ed.). See pp. 530-532

Although we find the ballot form submitted by the convention is misleading, we hasten to add that no member of this court would even suggest that any of the 52 members of the convention favoring it[3] had any intention whatever to deceive a single voter. We believe that the proposal is the result of nothing more than understandable zeal on the part of a group of delegates who had worked long and hard to produce a document that would not only be acceptable to the majority of the people of the state but would best serve the state for many years. Unfortunately, that zeal was translated into a partisan ballot form.

We cannot accept the argument underlying most of appellant's contentions, i.e., the virtually unlimited power of the convention, as the sole determiner of the propriety, fairness and construction of the ballot form for presentation of its document to the people. This argument is not stated as extremely by appellant as by some amici curiae, i.e., once called and convened the convention is vested with virtually total autonomy and can act as it wills, because complete trust and confidence have been reposed in it by the people.

We have accepted this premise, so long as the convention is acting within the scope of its delegated powers to propose, as a committee of the people, a scheme of government, or revisions or alterations of the existing system to be submitted

---

[3]The fact that 44 delegates opposed this ballot form is some indication that many of them shared the chancellor's views.

to the people for adoption or rejection. *Harvey* v. *Ridgeway*, supra. See also, *Pryor* v. *Lowe*, 258 Ark. 188, 523 S.W. 2d 199; Jameson on Constitutional Conventions (4th Ed.), p. 490. The idea of total autonomy might even permit the proponents of a proposed constitution to submit it for a positive vote only, as we have been led to believe has been done in other parts of the world. Not the most ardent advocate of the convention's ballot form would entertain that thought for a moment. The idea of total autonomy has been discarded long ago. This court has said that a constitutional convention is not omnipotent. *Berry* v. *Bellows*, 30 Ark. 198. We are told by one of the most widely recognized authorities on constitutional conventions that the "doctrine of convention sovereignty" represents mere oratorical flights of fancy and goes no further in actual practice than to assert the possession by the convention of incidental and emergency powers and its independence from legislative control. Hoar, Constitutional Conventions, p. 227. See also, Jameson on Constitutional Conventions (4th Ed.), p. 314.

We conclude that the convention was not the sole judge of the sufficiency of its ballot form and that the form submitted by it is misleading.

The decree is affirmed.

Mays, J., dissents.

Stroud, J., dissents in part.

Richard L. Mays, Justice, dissenting. Although Act 3 of 1977 contains no specific expression regulating ballot title forms and does not even purport to address the issue, this Court holds that the act controls the ballot title form of the proposed constitution of 1980. The Court seizes upon language of the act directing the constitutional convention to submit its final draft of the proposed constitution to the electors "for approval or rejection" to circumscribe judicial limits on the convention's ballot form. Since the ballot form adopted by the convention submits the issue to the electorate in the form of "for proposed constitution of 1980" or "for retention of the constitution of 1874," the Court concludes

that the ballot form is void because no space is provided for an elector to vote against the proposed constitution. The Court reasons that many voters may not appreciate that a vote for the constitution of 1874 is a *rejection* of the proposed constitution of 1980. I must respectfully dissent.

No specific provision can be found in our statutes or present state constitution which even purports to regulate the ballot title of a proposed constitution of a constitutional convention. Although Act 195 of 1943 regulates the ballot titles of constitutional amendments submitted to the voters by the General Assembly or initiated petitions, it has no application to the ballot title of a constitutional convention. Therefore, the only apparent limitation on the ballot title submitted by our constitutional convention is that found in our Federal Constitution.

Since the ballot title apprizes the voter of the question or issue to be voted on, the fundamental question should be whether the issue, as presented by the ballot, fairly and accurately informs the voter of the choices available. No one disputes that a vote against the proposed constitution of 1980 is in effect a vote for the constitution of 1874. It is simply contended that the ballot form is misleading because the voter who wants to *vote against* the 1980 constitution may not understand that he therefore must *vote for* the constitution of 1874. Although a voter so uninformed has my sympathy, the Federal Constitution does not assure a literal right to simply vote against but only a right to vote on the real question fairly and accurately presented. The real question to be submitted to the people of Arkansas in November, 1980 is not a choice between the constitution of 1980 or no constitution; it is a choice between the constitution of 1980 *or* the constitution of 1874. I, for one, am not prepared to say that the constitutional convention violates fundamental principles of due process by presenting the question to the voters in terms of the existing practical alternatives.

One other point should be made. The right of the people to change its constitutional government is one of the most important principles of a democracy. If that right can be

frustrated by the existing government's machinery without a clear mandate in the law, the right may lose its meaning.

I would reverse the judgment below.

JOHN F. STROUD, Justice, dissenting. I cannot say that the chancellor and the majority of my brethren are wrong in their finding that the ballot title proposed by the constitutional convention is misleading. However, I will not lightly overrule the proposal of the majority of the convention delegates if it is reasonably possible to preserve all or part of their will. An alternate ballot title suggested in the amicus curiae brief of Dr. Robert A. Leflar, President of the 1979-80 Arkansas Constitutional Convention, meets most of the objections of the majority opinion while preserving the language of the originally proposed ballot title. I would modify the decision of the chancellor to permit that suggested ballot title:

### PROPOSED CONSTITUTION of 1980

### FOR PROPOSED CONSTITUTION OF 1980

### AGAINST PROPOSED CONSTITUTION OF 1980 (FOR RETENTION OF CONSTITUTION OF 1874 AS AMENDED)