LAKE VIEW SCHOOL DISTRICT NO. 25 of Phillips County,
Arkansas, et al. *v.* Governor Mike HUCKABEE, et al.

01-836                                              210 S.W.3d 28

Supreme Court of Arkansas
Opinion delivered June 9, 2005

*Sharpe, Beavers, Cline & Wright,* by: *Brad Beavers,* for appellant,
Barton-Lexa School District, successor in interest to Lake View
School District; and amicus curiae, Forrest City School District.

*Friday, Eldredge & Clark, LLP,* by: *Christopher J. Heller,* for
appellant, Little Rock School District.

*Matthews, Campbell, Rhoads, McClure, Thompson & Fryauf,*
*P.A.,* by: *David R. Matthews,* for appellant, Rogers School District.

*Mike Beebe,* Att'y Gen., by: *Tim Gauger,* Sr. Ass't Att'y Gen.,
and *Mark Hagemeier,* Ass't Att'y Gen., for appellee, Governor Mike
Huckabee.

*Wilson Law Firm, P.A.,* by: *E. Dion Wilson,* for amici curiae,
Earle School District and Helena-West Helena School District.

*Sharon Street,* for amici curiae, DeQueen School District, et al.

*Barrett & Deacon*, by: *D.P. Marshall Jr.*, for amici curiae, Arkansas State Chamber of Commerce and Associated Industries of Arkansas, Inc.

ROBERT L. BROWN, Justice. On May 5, 2005, this court issued a *per curiam* order setting the various motions to recall the mandate and reappoint the masters for oral argument. Forty-nine school districts were represented as either movants for the recall of the mandate or movants for intervention or as *amici curiae*. We asked that the parties focus their attention on these issues in rebriefing and at oral argument:

> (1) this court's jurisdiction to hear the instant motions;

> (2) whether the General Assembly at its 2005 regular session retreated from its prior actions to comply with this court's directives in *Lake View Sch. Dist. No. 25 v. Huckabee*, 351 Ark. 31, 91 S.W.3d 472 (2002), particularly with respect to the General Assembly's actions or inactions in relation to Act 57 and Act 108 of the Second Extraordinary Session of 2003;

> (3) whether the foundation-funding levels for the next biennium assure a continual level of adequate funding for Arkansas students; and

> (4) whether the General Assembly's commitment to facilities funding meets the adequacy criterion.

Oral argument was then held on May 19, 2005.

We first conclude that this court has jurisdiction to recall its mandate and appoint masters to make findings of fact. *See Lake View Sch. Dist. No. 25 v. Huckabee*, 355 Ark. 617, 142 S.W.3d 643 (2004) (*per curiam*). *See also* Ark. Const. amend. 80, § 2(E).

We further made it radiantly clear in our supplemental opinion handed down on June 18, 2004, that although we were releasing jurisdiction of the case, we reserved the right to exercise our power *at any time* to assure that a constitutional system of education would be attained:

> The resolve of this court is clear. We will not waver in our commitment to the goal of an adequate and substantially equal education for all Arkansas students; nor will we waver from the

constitutional requirement that our State is to "ever maintain a general, suitable, and efficient system of free public schools[.]" Make no mistake, this court will exercise the power and authority of the judiciary *at any time* to assure that the students of our State will not fall short of the goal set forth by this court. We will assure its attainment.

*Lake View Sch. Dist. No. 25 v. Huckabee*, 358 Ark. 137, 161, 189 S.W.3d 1, 17 (2004) (emphasis added).

The allegations made by the movants in this case are of the most serious kind. The core assertions are that the General Assembly reneged on its legislative commitments and failed to comply with the landmark legislation passed during the Second Extraordinary Session in 2004. We are quick to add that we do not have adequate facts before this court to determine whether this is so. We merely underscore the seriousness of the allegations, but we further emphasize that they are only allegations.

The response of the State of Arkansas, both in its briefs and at oral argument, is first to deny any backtracking on the part of the General Assembly, but, secondly, to urge that even if there has been backtracking, a new case must be filed in circuit court, and litigation must begin anew. We are disinclined to agree with the State. This court's determination that Arkansas' public school funding system does not pass constitutional muster dates back twenty-two years. *See DuPree v. Alma Sch. Dist. No. 30*, 279 Ark. 340, 651 S.W.2d 90 (1983). Resolution of the issue has moved at glacier speed. There is no question in our minds that our failure to address the issues raised in the current motions with dispatch by using experienced Masters will only occasion additional delay. This we cannot sanction.

In our opinion handed down on June 18, 2004, we wrote about the laudable steps taken by the General Assembly to chart a constitutional course. This court is committed to assuring that that course remains fixed and true.

We, therefore, recall our mandate in this case forthwith and reappoint Bradley D. Jesson, former Chief Justice of the Arkansas Supreme Court, and David Newbern, a former Justice of the Arkansas Supreme Court. The Masters shall have the same powers and authority as set forth in *Lake View Sch. Dist. No. 25 v. Huckabee*, 356 Ark. 1, 144 S.W.3d 741 (2004) (*per curiam*). The

Masters are authorized to examine and evaluate the issues listed in this opinion, but also any other issue they deem relevant to constitutional compliance.

We direct that the Masters furnish this court with their report on or before September 1, 2005, unless the Masters request additional time.

GLAZE, CORBIN, and DICKEY, JJ., concur.

HANNAH, C.J., GUNTER, J., and Special Justice CAROL DALBY, dissent.

IMBER, J., not participating.

TOM GLAZE, Justice, concurring. I agree wholeheartedly with the court's decision to recall the mandate and reappoint the Masters; however, I write separately to address the separation-of-powers issues raised in the dissenting opinions. The separation-of-powers doctrine is set forth in Ark. Const. art. 4, §§ 1 and 2, as follows:

§ 1. Departments of government.

The powers of the government of the State of Arkansas shall be divided into three distinct departments, each of them to be confined to a separate body of magistracy, to-wit: Those which are legislative to one, those which are executive to another, and those which are judicial to another.

§ 2. Separation of departments.

No person, or collection of persons, being one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

This court has recognized that judicial review of legislative action is not undertaken *de novo* by a trial court because that would be judicial legislating and violative of the separation-of-powers doctrine contained in Ark. Const. art. 4, § 2. *City of Lowell v. M & N Mobile Home Park, Inc.*, 323 Ark. 332, 916 S.W.2d 95 (1996); *Johnson v. Sunray Serv., Inc.*, 306 Ark. 497, 816 S.W.2d 582 (1991); *Wenderoth v. City of Ft. Smith*, 251 Ark. 342, 472 S.W.2d 74 (1971).

However, in the 2002 *Lake View* decision, we rejected an argument that this court has "no role in examining school funding in light of the Arkansas Constitution." In that opinion, this court wrote as follows:

> This court's refusal to review school funding under our state
> constitution would be a complete abrogation of our judicial respon-
> sibility and would work a severe disservice to the people of this
> state. We refuse to close our eyes or turn a deaf ear to claims of a
> dereliction of duty in the field of education.

*Lake View School Dist. No. 25 v. Huckabee*, 351 Ark. 31, 91 S.W.3d
472 (2002).

The court continued by noting that early on, this court
announced that "[t]he people of the State, in the rightful exercise
of their sovereign powers, ordained and established the constitu-
tion; and the only duty devolved upon this court is to expound and
interpret it." *Id.* at 54 (quoting *State v. Floyd*, 9 Ark. 302, 315
(1849)). We then quoted extensively from the Supreme Court of
Kentucky, explicitly adopting the following language:

> [W]e must address a point made by the appellants with respect
> to our authority to enter this fray and to "stick our judicial noses"
> into what is argued to be strictly the General Assembly's business.
>
> . . . .
>
> . . . [In this case] we are asked — based solely on the evidence in
> the record before us — if the present system of common schools in
> Kentucky is "efficient" in the constitutional sense. *It is our sworn
> duty, to decide such questions when they are before us by applying the
> constitution.* The duty of the judiciary in Kentucky was so deter-
> mined when the citizens of Kentucky enacted the social compact
> called the Constitution and in it provided for the existence of a third
> equal branch of government, the judiciary.
>
> . . . .
>
> *To avoid deciding the case because of "legislative discretion," "legislative
> function," etc., would be a denigration of our own constitutional duty.* To
> allow the General Assembly (or, in point of fact, the Executive) to
> decide whether its actions are constitutional is literally unthinkable.
>
> . . . .
>
> The judiciary has the ultimate power, and the duty, to apply,
> interpret, define, and construe all words, phrases, sentences and

sections of the Kentucky Constitution as necessitated by the controversies before it. It is solely the function of the judiciary to so do. *This duty must be exercised even when such action services as a check on the activities of another branch of government or when the court's view of the constitution is contrary to that of other branches, or even that of the public.*

*Lake View,* 353 Ark. at 54-55 (emphasis added) (quoting *Rose v. Council for Better Education, Inc.,* 790 S.W.2d 186, 208-10 (Ky. 1989))

How cynical it would be for the court to don such a sweeping mantle, and then cast it aside at this juncture. If it were "not this court's role" to interject itself into this particular fray, then we should never have done so in the first place. We accepted the role when we recalled our mandate in February of 2004, and for the dissenting justices to call upon us to reject it now, for fear of being viewed as an inappropriate "watchdog" is the height of hypocrisy. While it is certain that we cannot control the actions of the legislative branch, *see Wells v. Purcell,* 267 Ark. 456, 592 S.W. 100 (1979), it nevertheless remains clear that the doctrine of separation of powers does not prevent the judicial branch from passing on the validity of legislative acts. *See Riviere v. Wells,* 270 Ark. 206, 604 S.W.2d 560 (1980). When, as here, we have taken upon ourselves the daunting task of ensuring compliance with our constitutional mandate for a "general, suitable, and efficient system of free public schools," *see* Ark. Const. art. 14, § 1, we should not shrug off that extraordinary calling because we are suddenly afraid of how our actions might be perceived, or for some unfounded "separation of powers" concerns. In sum, if this court does not take all necessary steps to ensure that the General Assembly had complied with the clear terms of our *Lake View* ruling, who will? No one else has done so for twenty-two years, and it is incumbent that we do so now!

CORBIN and DICKEY, JJ., joins this concurring opinion.

DONALD L. CORBIN, Justice, concurring. I hesitate to write separately because I wholeheartedly agree with the majority's position in this matter. Unfortunately, I cannot sit back and allow the dissenters to label me as some kind of "super-legislature." Simply put, the dissenters do not agree with the majority's decision to reappoint the Masters to investigate the very serious allegations raised by a number of school districts of this State, so they attempt to cloud the real issues at hand by raising the specter that this court is creating a constitutional crisis by usurping the role of the General Assembly. This is simply not the case.

By reappointing the Masters, the majority is fulfilling its duty to oversee the constitutionality of the State's educational system. At this time, this court has no way of knowing whether the legislation enacted puts the State's educational system on the road to constitutionality. The Masters will be in a position to take evidence to determine if there is any truth to the accusations. I believe that many in the General Assembly have worked diligently to improve our system of education, but just because some action has been taken does not mean that this court should assume that all is well and summarily dismiss the petitions now pending. Reappointing the Masters is not tantamount to legislating.

I do not believe that the majority has any designs to tell the legislative branch how to manage specific educational programs or that it must enact any specific legislation regarding education. We are in accord that it is the duty of the legislative branch to develop policy as it relates to our system of education. However, this court has decreed that the General Assembly must provide the children of this State with an adequate and substantially equal education. If we were to ignore the allegations that have now been raised before this court, we would be shirking our duties to the citizens of this State. The dissent makes much ado about the fact that the members of the General Assembly have been elected by the people of this State to represent their interests; well, the members of this court have also been elected by the citizens of Arkansas and one of our duties as jurists is to ensure that the laws governing the people of this State are constitutional.

It would certainly be easier for this court to rule that we have no jurisdiction and that any new challenge must again be filed in the circuit court, but to do so would send a signal that our resolve to ensure a constitutional educational system was less than strong. Moreover, requiring the filing of a new lawsuit would result in yet another prolonged delay to a critical issue that has been pending before this court for twenty-two years. Such a result is unacceptable.

GLAZE and DICKEY, JJ., join in this concurrence.

BETTY C. DICKEY, Justice, concurring. When this court released jurisdiction on June 18, 2004, and the mandate issued, the decision was predicated upon the General Assembly's continuing the ambitious course it had set of an "adequate and substantially equal education" for all Arkansas students. We are now asked to decide whether there has been a retreat or abandonment of

the goals of the 2003 legislative session, specifically with respect to Acts 57 and 108, and specifically in the areas of foundation and facilities funding. We do not have adequate information to determine whether the allegations various school districts have made are valid. And our duty to the children of Arkansas requires that we delay no longer the inquiry of whether we are continuing to move forward toward a "general, suitable, and efficient" system of free, public schools. With great reluctance, we make the decision to again recall the mandate for an unprecedented second time, and appoint special masters, because twenty-two years is time enough to achieve compliance with our Constitution. We cannot wait for other cases to wend their way through the system, while hoping that successive legislative sessions don't "go wobbly" in their resolve to put the educational needs of the children first. This is truly a process that is "not for the short-winded."

It is hoped that the special masters, in reviewing whether there is compliance with Lake View decisions and recent legislation, will soon be able to determine whether there is sufficient funding, whether those funds are being used efficiently, and whether funds earmarked for education are being diverted to other programs.

For these reasons, I concur with the majority.

GLAZE and CORBIN, JJ., join.

JIM HANNAH, Chief Justice, dissenting. I respectfully dissent. I am sure that it is the depth of concern over the perpetual struggle to provide appropriate public schools that has obscured the majority's understanding and resulted in this usurpation by seizing power to act where there is no power to act. The majority is clearly confused, as is demonstrated by the following statement in the majority opinion:

> We further made it radiantly clear in our supplemental opinion handed down on June 18, 2004, that although we were releasing jurisdiction of the case, we reserved the right to exercise our power *at any time* to assure that a constitutional system of education would be attained. . . .

It is a misperception that the issue of the constitutionality of the public schools in Arkansas has been pending for twenty-two years. No case on the constitutionality of the public schools has been pending before this court for twenty-two years.

While I understand and share the desire to assure that a constitutional system of public education is attained, the desire to see that the legislature does so is hardly a basis of jurisdiction. Neither does a fair warning that the court may act give rise to jurisdiction. Yet the majority asserts that it has jurisdiction, giving a meaning to the word jurisdiction heretofore unknown. I am confused, although I am reminded of Alice and Humpty Dumpty in *Through the Looking Glass*. In conversation with Alice, Humpty Dumpty stated, "There's glory for you." Alice was confused by the use of the word "glory."

> "I don't know what you mean by 'glory,' " Alice said.

> Humpty Dumpty smiled contemptuously. "Of course you don't — till I tell you. I meant 'there's a nice knock down argument for you!' "

> "But 'glory' doesn't mean 'a nice knock down argument for you,' " Alice objected.

> "When I use a word," Humpty Dumpty said, in rather a scornful tone, "it means just what I choose it to mean — neither more nor less."

> "The question is," said Alice, "whether you can make the words mean so many different things."

> "The question is," said Humpty Dumpty, "which is to be master — that's all"

Lewis Carroll, *The Complete Illustrated Lewis Carroll* 196 (New York: Gallery Books, 1991). It appears that this court is assuming jurisdiction just because we choose to say we can.

"Jurisdiction is the power of the court to hear and determine the subject matter in controversy between the parties." *Pedersen v. Stracener*, 354 Ark. 716, 719, 128 S.W.3d 818 (2003). According to Rogers School District No. 30, the controversy in this case is apparently a failure by the State to "follow this court's directives and their failure to honor their commitment previously given this Court" to provide a constitutional public school system. It is clear that this court has no authority to issue orders to the legislature. So what is this case now, an original action in this court for breach of promise?

It certainly appears that the school districts and the State are arguing over whether the school system enacted in the last legislative session meets constitutional requirements, but there is no justiciable controversy on that issue before this court. Our jurisdiction arises from *Lake View Sch. District No. 25 v. Huckabee*, 351 Ark. 31, 91 S.W. 3d 472 (2002) (*Lake View III*), where the majority stated that the case was "an appeal from a final order of the Pulaski County Circuit Court entered May 25, 2001, which concluded that the current school-funding system is unconstitutional . . . ." *Lake View III*, 351 Ark. at 42. This court further stated, "We affirm the trial court's order regarding the unconstitutionality of the public school-funding system but reverse its finding relative to excess debt service. . . ." *Id.* Thus, the issue of a future school system enacted by the General Assembly in the last legislative session was not the subject of the case in *Lake View III* and further has never been the subject of litigation in the circuit court. A mandate may not be recalled to examine an issue that was not the subject of the prior litigation. *In re Kunkel*, 398 F.3d 683 (5th Cir. 2005).

In short, there is no jurisdiction in this case. With the exception of the contempt power and certain listed writs, this court has appellate jurisdiction only. *Bynum v. Savage*, 312 Ark. 137, 847 S.W.2d 705 (1993). There is no appellate jurisdiction in this case because there is no order from a lower court to review in this case, which is what appellate courts do. *Ward Sch. Bus Mfg., Inc. v. Fowler*, 261 Ark. 100, 547 S.W.2d 394 (1977). Original jurisdiction is jurisdiction to decide a matter in the first instance. *Wooley v. State Farm Fire and Cas. Ins. Co.*, 893 So. 2d 746 (La. 2005). The majority is appointing special masters to decide in the first instance whether the legislature has "attained" a "constitutional system of education." This court lacks original jurisdiction to undertake such a determination.

Yet here we are discussing recalling the mandate to allow this court to review whether the legislature did what this court never ordered it to do and what this court never had the authority to order it to do. Besides, just based on simple logic, how does recall of a mandate affirming a decision by the circuit court that the then-existing school system is unconstitutional allow this court to examine the question of the constitutionality of a subsequently enacted school system? Focusing too long on the majority's analysis of its authority to act in this case may result in cramping of the cerebral cortex.

In any event, there is no reason to recall the mandate regarding the constitutionality of the legislative enactments from the last legislative session regarding schools because they are presumed constitutional. In *Bush v. Martineau*, 174 Ark. 214, 295 S.W. 9 (1927), this court cited cases dating to 1836 showing that an act of the legislature is presumed constitutional. The law remains the same today. *Davis v. Parham*, 362 Ark. 352, 208 S.W.3d 162 (2005). Until someone challenges the new school system in circuit court and obtains a ruling of the circuit court that the system is unconstitutional, then the system is constitutional.

Justice Glaze's concurring opinion states that "[i]f it were 'not this court's role' to interject itself into this particular fray, then we should not have done so in the first place." The concurring opinion argues that to retreat from the "fray" is to engage in the "height of hypocrisy." From my first involvement in this case, I have opposed this court's attempts to direct the General Assembly and stated in my concurrence to *Lake View Sch. Dist No. 25 v. Huckabee*, 351 Ark. 31, 91 S.W. 3d 472 (2002) (*Lake View III*), that the role of this court is to determine whether acts of the General Assembly concerning the public school system are constitutional and not to direct the General Assembly as to what legislation to enact. I restated my concerns about encroaching upon the constitutional duties of the General Assembly in my concurring opinion in *Lake View Sch. Dist No. 25 v. Huckabee*, 358 Ark. 137, 189 S.W.3d 1 (2004). If we interjected ourselves into this "fray" in error, then any position other than dissent to this court's actions in this opinion would only be to perpetuate error.

What brings us to the brink of abandoning the doctrine of separation of powers is not hard to understand. When we begin our analysis correctly, it is not difficult to continue down the right path. However, once we err, it can be very difficult to get back on the right path. It is beyond dispute in Arkansas that the responsibility for the creation, organization and regulation of the public schools system is within the exclusive province of the legislature. *Loyd v. Knight*, 288 Ark. 474, 706 S.W.2d 393 (1986); *Heber Springs Sch. Dist. v. West Side Sch. Dist.*, 269 Ark. 148, 599 S.W. 2d 371 (1980); *Wallace Sch. Dist. v. County Bd. of Educ.*, 214 Ark. 436, 439, 216 S.W.2d 790 (1949). The Arkansas Constitution vests in the General Assembly the duty and authority to establish, maintain, and support a public school system. *Barker v. Frank*, 327 Ark. 589, 939 S.W.2d 837 (1997); *East Poinsett County Sch. Dist. No. 14 v. Massey*, 315 Ark. 163, 866 S.W.2d 369 (1993); *Saline County Educ.*

*Bd. v. Hot Springs Educ. Bd.*, 270 Ark. 136, 603 S.W.2d 413 (1980). *See also, Lemaire v. Henderson*, 174 Ark. 936, 298 S.W. 327 (1927). In 1934, this court stated:

> It has been too often held, as now to be a matter of debate, that the Legislature is clothed by the Constitution with plenary power over the management and operation of the public schools. It is for the Legislature to declare policy with reference to the schools, and, however much this court might doubt the wisdom of the policy declared, it has no power to alter it.

*Wheelis v. Franks*, 189 Ark. 373, 377, 72 S.W.2d 231 (1934). That the legislature has plenary power over the public schools means that it has full power. *Beard v. Albritton*, 182 Ark. 538, 31 S.W.2d 959 (1930). "We do not even imply that we have the authority to dictate to the General Assembly. . . ." *Wells v. Riviere*, 269 Ark. 156, 169, 599 S.W. 2d 375 (1980). Yet off we go now asserting that we ordered studies and very specific actions by the legislature.

I must also note another argued basis for jurisdiction. The majority in *Lake View III* stated that "[t]he people of this State unquestionably wanted all departments of state government to be responsible for providing a general, suitable and efficient system of public education to the children of this state." *Lake View III*, 351 Ark. at 53. It is not clear what this means. This assertion provides no basis for jurisdiction. Perhaps the statement was only intended to announce a noble sentiment; however, it resulted in the petitioners arguing at the last oral argument that there was a distinct form of jurisdiction in school cases allowing this court to direct the General Assembly with respect to establishment of the public schools. There is no such jurisdiction. Our jurisdiction is appellate with the noted very limited exceptions.

Further, this constitutes a blending of the powers of the legislative and judicial branches of government, and this court has specifically rejected the notion of a "blending" of powers in favor of a strict separation of powers. We have stated "Our system, providing as it does for distinct separation of departments, did not in its inception contemplate a blending of authority; and overlapping must not be permitted now at the command of expediency or in response to the nod of convenience." *Spradlin v. Arkansas Ethics Comm'n*, 314 Ark. 108, 115, 858 S.W.2d 684 (1993)(quoting *Oates v. Rogers*, 201 Ark. 335, 346, 144 S.W. 2d 457 (1940)). In *Lake View III*, a stay of one year was mistakenly granted to avoid a

nonexistent problem of litigation arising from continued operation of a public school system declared unconstitutional by this court. Somehow, in a metamorphosis that would make even Franz Kafka's head spin, the stay miraculously transformed itself from a stay to prohibit litigation regarding the unconstitutional school system to a stay and order that the legislature enact a constitutional school system by January 4, 2004. How could such a stay and order ever be squared with the law that the legislature has plenary power over the creation, organization and regulation of the public schools? *See Loyd, supra.*

There is no jurisdiction to recall the mandate. There is no jurisdiction on any basis for this court to consider the school system enacted by the General Assembly in the last legislative session, and, further, the recall is in violation of the separation-of-powers doctrine. The action of the majority in recalling the mandate is nothing more than a usurpation of the legislative function in utter disregard for the separation-of-powers doctrine that has protected our representative form of government over many generations. This court has now set precedent that it stands as the ever vigilant monitor of the public schools, and as this case proves, every two years we will again be asked to review the school system. Such a review is an exercise of original jurisdiction that this court is not granted by our constitution. Section 6 of Amendment 80 provides, "Circuit Courts are established as the trial courts of original jurisdiction of all justiciable matters not otherwise assigned pursuant to this Constitution." I wonder why we have trial courts if this court has now decided to try cases.

I dissent because we have no jurisdiction to recall the mandate and no jurisdiction to review the school system enacted in the last legislative session. Neither cries of frustration, nor cries that efficiency demands our action, nor even unfounded cries that the General Assembly will "cut and run" should tempt us to abandon our form of government and make this court a superlegislature.

GUNTER, J., and SPECIAL JUSTICE CAROL DALBY join this dissent.

JIM GUNTER, Justice, dissenting. I respectfully dissent. This court has no jurisdiction. The jurisdiction of the Arkansas Supreme Court arises solely from Amendment 80 to the Arkansas Constitution. Amendment 80 states that

(D) The Supreme Court shall have:

(1) Statewide appellate jurisdiction;

(2) Original jurisdiction to issue writs of quo warranto to all persons holding judicial office, and to officers of political corporations when the question involved is the legal existence of such corporations;

(3) Original jurisdiction to answer questions of state law certified by a court of the United States, which may be exercised pursuant to Supreme Court rule;

(4) Original jurisdiction to determine sufficiency of state initiative and referendum petitions and proposed constitutional amendments; and

(5) Only such other original jurisdiction as provided by this Constitution.

(E) The Supreme Court shall have power to issue and determine any and all writs necessary in aid of its jurisdiction and to delegate to its several justices the power to issue such writs.

Ark. Const. Amend 80, § 2.

The majority's reliance on our decision in *Lake View Sch. Dist. No. 25 v. Huckabee*, 355 Ark. 617, 142 S.W.3d 643 (2004), *Lake View Sch. Dist. No. 25 v. Huckabee*, 358 Ark. 137, 189 S.W.3d 1 (2004), and Amendment 80, section 2(E) of the Arkansas Constitution is misplaced. The majority quotes the following language in our decision in *Lake View* handed down on June 18, 2004, in order to justify its power to accept this case:

> We will not waver in our commitment to the goal of an adequate and substantially equal education for all Arkansas students; nor will we waver from the constitutional requirement that our State is to "ever maintain a general, suitable, and efficient system of free public schools[.]" Make no mistake, this court will exercise the power and authority of the judiciary at any time to assure that the students of our State will not fall short of the goal set forth by this court.

*Lake View Sch. Dist. No. 25 v. Huckabee*, 358 Ark. 137, 161, 189 S.W.3d 1, 17 (2004).

Jurisdiction is the power of the court to hear and determine the subject matter in controversy between the parties. *Conner v. Simes*, 355 Ark. 422, 139 S.W.3d 476 (2003). We have a duty to

determine if we have jurisdiction over a case, and if we do not, we cannot make any determinations with regard to the matter. *Terry v. Lock*, 343 Ark. 452, 458, 37 S.W.3d 202, 204 (2001). This court's "power and authority" to hear a case comes from the Arkansas Constitution, specifically Amendment 80, section 2. The majority points to Ark. Const. Amend 80, § 2(E) as the basis for our jurisdiction in this case. Section 2(E) states that "[t]he Supreme Court shall have power to issue and determine any and all writs necessary in aid of its jurisdiction and to delegate to its several justices the power to issue such writs." This section assumes that the court already has jurisdiction. A court cannot issue a writ "in aid of its jurisdiction" when it has no jurisdiction in the first place. The majority has cited nothing more than our statement in *Lake View* that we "will exercise the power and authority of the judiciary" as its basis for this jurisdiction. Our saying that it is so does not necessarily make it so, regardless of how laudable our motives.

Moreover, in spite of the collective frustration of this court, the legislature, the governor, and the citizens of this state, the citizens of Arkansas have not given this court the job of establishing, maintaining, or operating the public-school system. The act of the majority decision in recalling the *Lake View* mandate, once again, expresses the court's distrust of the legislature, which *has* been given that job. Article 14, Section 1 of the Arkansas Constitution states that

> the State shall ever maintain a general, suitable and efficient system of free public schools and shall adopt all suitable means to secure to the people the advantages and opportunities of education. The specific intention of this amendment is to authorize that in addition to existing constitutional or statutory provisions[,] the General Assembly and/or public school districts may spend public funds for the education of persons over twenty-one (21) years of age and under six (6) years of age, as may be provided by law, and no other interpretation shall be given to it.

Ark. Const. Art. 14, § 1 (as amended by Const. Amend. 53).

We have long recognized that this provision vests "in the legislature the duty and authority to make provisions for the establishment, maintenance and support of a common school system in our state." *Saline County Bd. of Educ. v. Hot Spring County Bd. of Educ.*, 270 Ark. 136, 603 S.W.2d 413 (1980); *Wheelis v.*

*Franks,* 189 Ark. 373, 72 S.W.2d 231 (1934). While our jurisdiction to decide cases and controversies before us gives us the power to declare the school system and laws of the legislature unconstitutional in the appropriate case, it does not give us the power to legislate. That power belongs to the legislature. *See Barker v. Frank,* 327 Ark. 589, 939 S.W.2d 837 (1997); *Saline County Bd. of Educ., supra.* The citizens of this state elected each of us to serve as justices, not legislators. Nor does it gives us the power to act as a court of original jurisdiction and find facts. We have original jurisdiction in certain well-defined situations. *See* Ark. Const. Amend 80, § 2(D)(2), (3), (4), and (5). This is not one of them.

The government of Arkansas has been delegated by the people to three separate departments: the Legislative Department, the Executive Department, and the Judicial Department. *See* Ark. Const. Art. 4. Each department has been granted certain powers, and "[n]o person or collection of persons, being of one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted." Ark. Const. Art. 4, § 2. Had the people wanted this court to run the school system and to disregard the legislature's efforts, there would have been plain language to that effect in our constitution. There is not; so the majority relies on its own creation of authority to act. By our repeated recall of the mandate, we have announced our authority and intent to review each session of the legislature in sweeping fashion. Our action may be interpreted as bullying the legislature to spend more on an area of government that we favor most for the moment. Every legislative session benefits some educational groups or districts and disadvantages others. While we may receive accolades from those who benefit from our decision, it is not this court's role to make these decisions, whether directly or indirectly. The majority is setting this court up to perform a perpetual review of the State's educational policy. In addition to being outside of our power and authority, this solution is simply unworkable.

We have been insensitive to the people of Arkansas by casting shadows on their selected representatives in the General Assembly. We have assumed the position of grading the financial decisions of the body charged with running the entire state on a limited budget. If that were not enough, we have decided to evaluate these decisions before the General Assembly's solution has even been placed into action.

In my opinion, instead of building more power for the court, we should exercise judicial restraint. We should leave the power in the hands of the people. We should leave education in the hands of the legislature. We should demonstrate that we respect the power of the people to entrust decisions to their elected representatives, thereby allowing government by the people and for the people. We should adhere to the fundamental system of government established in our constitution, which relies on three distinct and separate branches. We should limit the exercise of our power to the Judicial Department.[1]

HANNAH, C.J., and CAROL DALBY, Special Justice, join this dissent.

CAROL DALBY, Special Justice, dissenting. I respectfully dissent. There are two issues which preclude this court from recalling its mandate and appointing masters to review the work of our elected legislature. The first is jurisdiction, and the second is separation of powers.

There is not a person involved in this case who wants to see another generation of Arkansas school children grow up, graduate, and we as a state fail to provide them with the education and tools they will need to compete and thrive in an ever increasing competitive and global market. It is inconceivable that any Arkansan would want our children to lag further and further behind because of an inability to provide a general, suitable, and efficient education. This is the very reason it is so enticing to heed the siren's song and reenter this case; however, the very laws and rules of this court to which we must adhere should restrain the call for judicial activism.

I have no doubt that had the legislature ignored *Lake View School District No 25 v. Huckabee, et al.,* 351 Ark. 31, 91 S.W.3d 472 (2002) (*Lake View III*) and/or *Lake View School District No 25 v. Huckabee, et al.,* 358 Ark. 137, 189 S.W.3d 1 (2004), and refused to enact a new system for funding public schools, this court would have jurisdiction. This court made it abundantly clear in its June 18, 2004, opinion that:

---

[1] "The judicial power is vested in the Judicial Department of state government, consisting of a Supreme Court and other courts established by this Constitution." Ark. Const. Amend 80, § 1.

> We will not waiver in our commitment to the goal of an adequate and substantially equal education for all Arkansas students; nor will we waiver from the constitutional requirement that our State is to "ever maintain a general, suitable, and efficient system of free public schools." Make no mistake, this court will exercise the power and authority of the judiciary at any time to assure that the students of our state will not fall short of the goal set forth by this court.

The legislature acted. The various parties may disagree with what was done, but the proper challenges to the recent changes and reforms to education in Arkansas must first be heard in the circuit court. The jurisdiction of this court is appellate only with noted exceptions. Ark. Const. amend. 80. There is no appellate jurisdiction in this case because there is no order from a lower court to review. *Ward Sch. Bus Mfg., Inc. v. Fowler*, 261 Ark 100, 547 SW 2d 394 (1977).

The second issue which precludes this court from re-entering this case is the time honored bedrock of our form of government and that is separation of powers. Our government is separated into three departments: the legislative department, the executive department, and the judicial department. Ark. Const. art. 4, § 1. Further, Article 4, § 2 of our constitution provides:

> No person or collection of persons, being of one of these departments, shall exercise any power belonging to either of the others, except in the instances hereinafter expressly directed or permitted.

This court has not been given, nor has it ever had the authority to maintain a general, suitable, and efficient system of free public schools. Ark. Const. art. 4, § 1. That authority rests with the legislature. For this court to assume even an inkling of legislative authority weakens our judiciary and draws us into the Serbonian Bog from which we may never emerge. Like it or not, education and its reform in Arkansas rests with the legislature. If the people of Arkansas are not satisfied with what the elected representatives have crafted, then the people have the power to facilitate change. This court has courageously sounded the call for change. This court has acted with boldness and determination, but this court cannot and must not act beyond its constitutionally given powers.

HANNAH, C.J., and GUNTER, J., join.